Raley E. Brown, Petitioner *v.* The School District of Cheltenham Township, Respondent.

484

Argued June 5, 1980, before Judges MENCER, CRAIG and MACPHAIL, sitting as a panel of three.

*Arthur L. Jenkins, Jr.*, Smith, Aker, Grossman, Hollinger & Jenkins, for appellant.

*Charles Potash, Wisler*, Pearlstine, Talone, Craig & Garrity, for appellee.

OPINION BY JUDGE MENCER, August 15, 1980:

Raloy E. Brown (petitioner) appeals to this court from an order of the Secretary of Education (Secretary) dismissing his appeal from a demotion by the Board of School Directors of the Cheltenham Township School District (Board).

The petitioner, a professional employee, was the principal of the Cheltenham Elementary School when, on September 20, 1977, he was demoted by the Board and reassigned as a fifth grade classroom teacher at the Wyncote School. His salary as principal was $30,-835, and he was paid $24,704 as a classroom teacher since he qualified "at the 14th level of a doctorate on the teacher salary guide."

Our scope of review is limited here to a determination of whether or not the Secretary's adjudication was in accordance with law, the petitioner's constitutional rights were violated, and the findings of the Secretary were supported by substantial evidence. *Patchel v. Board of School Directors of Wilkinsburg School District*, 42 Pa. Commonwealth Ct. 34, 400 A.2d 229 (1979).

A reading of the record discloses support for the following:

On November 25, 1974, a resolution was adopted by the Board, relating to the reorganization of the schools of the district. The elementary schools were changed from kindergarten through grade 6 to kindergarten through grade 5, three 3-year junior high schools were changed to two middle schools for grades 6 through 8, and the high school was changed from a 3-year to a 4-year school. Further, the reorganization plan reduced the number of elementary schools in the district from six to four, thereby reducing the total number of school buildings in the district from ten to seven.

As a result of this reorganization, the required number of building principals was commensurately reduced from ten to seven. The school district was therefore placed in the position of having to eliminate two elementary school principal positions and one secondary school principal position. Because of the

retirement of one of the elementary school principals at the end of the 1976-77 school year, nine principals remained to fill the seven remaining positions.

The then Superintendent of Schools, Dr. John R. Thorson, recommended to the Board that all principals be rated to determine their quality of performance and that, based upon the ratings and the evaluation of their respective performance and certifications, the principals to be reassigned could be selected. The evaluation was also to include Dr. Thorson's determination of the principals' potential performance in the positions remaining after reorganization. The Board approved these recommendations on November 11, 1975.

Thereafter, Dr. Thorson advised the principals of the selection process he intended to use, including the fact that the state-approved DEBE 333 form would be adapted to better reflect the qualities and characteristics needed of a principal, as opposed to those of a classroom teacher or other professional employee, and that seniority would not be a factor.

Dr. Thorson subsequently evaluated all of the principals, rating each in four major categories. Petitioner received 74 out of a possible 80 points, with 18 out of 20 points in the first category, "personality," 19 out of 20 points in the second category, "preparation," 18 out of 20 points in the third category, "technique," and 19 out of 20 points in the fourth category, "pupil reaction." The evaluation of petitioner by Dr. Thorson indicated a need for improvement, in comparison with the other principals in the following areas: his comfort in dealing with parent groups and his degree of involvement in social interaction with parents; his professional relationships with other principals and members of the administrative staff; his support of the policies of the administration; his appreciation of the financial situation of the district, particularly with

respect to budget creation and control at the individual school level; and his ability to relate to parents who disagreed with his educational philosophy. His rating was lower than any of the principals retained as principals.

Dr. Thorson's determination as to the potential performance of the respective principals in the schools remaining after reorganization evidenced his opinion that the retention of five of the principals in the positions which they held prior to the reorganization would benefit the school district by maintaining continuity and the good relationships which they had with the students, faculty, and community of their respective schools.

The evaluation also indicated that in the two instances where principals were recommended for reassignment to other schools, the district would receive similar benefits. In both instances, the elementary school principals were reassigned from school buildings which were closing to schools to which their former students were also being reassigned.

Additionally, in the case of the Cheltenham Elementary School, the reassignment of pupils from one of the closed elementary schools meant a change in educational format. When Dr. Brown was principal at Cheltenham, the program had been an "open framework" concept. The students being transferred to Cheltenham Elementary came from a more structured, traditional school. For these reasons, the Cheltenham Elementary program, after reorganization, would offer both open framework and more traditional, structured programs. Dr. Brown had indicated his belief that only one program of education should be utilized in a school.

On the basis of this record evidence, the Board made findings of fact and determined that petitioner's reassignment from the position of principal to that of

classroom teacher was a demotion in both salary and type of position which was in the best interest of the school district.

Judge ROGERS, writing for this court in *Lucostic v. Brownsville Area School District,* 6 Pa. Commonwealth Ct. 587, 590-91, 297 A.2d 516, 518 (1972), stated:

> Section 1151 of Article XI of the Public School Code of 1949 [Act of March 10, 1949, P.L. 30, *as amended*], 24 P.S. §11-1151, provides: 'The salary of any district superintendent, assistant district superintendent or other professional employe in any school district may be increased at any time during the term for which such person is employed, whenever the board of school directors of the district deems it necessary or advisable to do so, but there shall be no demotion of any professional employe either in salary or in type of position, except as otherwise provided in this act, without the consent of the employe, or, if such consent is not received, then such demotion shall be subject to the right to a hearing before the board of school directors and an appeal in the same manner as hereinbefore provided in the case of the dismissal of a professional employe.' The cases which have arisen under this provision establish the following principles: (1) A Board of School Directors may demote a professional employe in position or salary or both without his or her consent. (Tassone v. Redstone Township School District, 408 Pa. 290, 183 A.2d 536 (1962)); (2) the action of the Board in such case is presumptively valid (Hibbs v. Arensberg, 276 Pa. 24, 119 A. 727 (1923)); and (3) the demoted employe contesting the Board's action has the burden of proving it to be arbitrary, discriminatory or founded upon improper considerations (Smith

v. Darby School District, 388 Pa. 301, 130 A.2d 661 (1957); Lakeland Joint School District v. Gilvary, 3 Pa. Commonwealth Ct. 415, 283 A.2d 500 (1971)).

Petitioner contends, in essence, that the action of the Board in demoting him was arbitrary, capricious, and discriminatory. He presented testimony that he asserts establishes that the method of evaluation utilized by Dr. Thorson was arbitrary, unfair, and unreasonable. However, we have read the extensive record in this case, and, although we might have decided differently if the decision had been ours to make, we conclude on this record and under our scope of review that, as to all main issues, the petitioner did not meet the burden of proof required to reverse the Board's action of demotion. *Lakeland Joint School District v. Gilvary*, 3 Pa. Commonwealth Ct. 415, 283 A.2d 500 (1971).

Petitioner further contends that it was improper for the solicitor of the Board to act as prosecutor and for a school board member to act as a legal advisor to the Board. We disagree. Unlike the fact situation in *English v. North East Board of Education*, 22 Pa. Commonwealth Ct. 240, 348 A.2d 494 (1975), where the school board's solicitor acted in the dual role of judge and prosecutor, the school solicitor here merely presented evidence and questioned witnesses on behalf of the school district. The president of the Board, who was an attorney, ruled on all objections and determined what testimony was to be admitted into evidence. W. D. Webb, a member of the Board and an attorney, advised the Board during the hearings and in the decision-making process. We conclude that these contentions concerning improper representations and commingling of functions are without merit.

Petitioner raised other issues on this appeal relative to the procedure followed and the conclusions

reached by the Secretary which we find to be without merit.[1]

Accordingly, we enter the following

ORDER

Now, this 15th day of August, 1980, the order of the Secretary of Education, dated May 8, 1979, which dismissed the appeal of Raloy Brown from the decision of demotion by the Board of School Directors of the Cheltenham Township School District, is hereby affirmed.

---

[1] Those issues, set forth in petitioner's brief, are:

6. Were the rights of [petitioner] violated when the hearing examiner at the Department of Education did not decide the case?

7. Did the Secretary of Education err in concluding that the actions of [the school district] could be upheld by adopting a standard not authorized by the school board?

8. Did the Secretary of Education err in concluding that the arbitrariness of [the school district] in demotion proceedings did not infringe upon the rights of [petitioner]?