**Terry R. HARMON,**

v.

**MIFFLIN COUNTY SCHOOL DISTRICT, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Sept. 21, 1994.

Decided Dec. 15, 1994.

Norman L. Levin, for appellant.

No appearance for the appellee.

Stuart L. Knade, for amicus curiae Pennsylvania School Boards Assn.

Before COLINS, President Judge, and DOYLE, SMITH, PELLEGRINI, FRIEDMAN, KELLEY and NEWMAN, JJ.

PELLEGRINI, Judge.

Mifflin County School District (School District) appeals the decision of the Court of Common Pleas of Mifflin County (trial court) sustaining the appeal of Terry R. Harmon (Harmon) and remanding to the School District for a second termination hearing.

Harmon, a custodian at a middle school, was notified by Herman Frank, the Director of Buildings and Grounds, that he was suspended without pay. The reason given for the suspension was improper conduct and a violation of school rules by conspiring with and providing money to another employee to purchase marijuana while an employee of the School District. Harmon had been implicated by other employees but when confronted with the accusation by Director Frank, Harmon would not comment. Director Frank also notified Harmon that he recommended to the School District Board of Directors (School Board) that he be terminated. On March 18, 1991, the School Board terminated Harmon based on Director Frank's recommendation. The School District's Solicitor was present at the meeting when the School Board decided to follow Director Frank's recommendation and terminate Harmon. Harmon was notified by letter signed by the secretary and the president of the School Board of his termination and of his right to a hearing.

Challenging his termination under Section 514 of the Public School Code of 1949 (Public School Code),[1] Harmon requested a hearing before the School Board. Stephen Russell, counsel for the Pennsylvania School Board's Association, conducted the hearing on behalf of the School Board and advised them in

their decision. The School District Solicitor prosecuted the case on behalf of the School District administration. Harmon's counsel challenged the Solicitor's participation in the hearing as "impermissible commingling". The School Board denied that challenge and subsequently voted to affirm Harmon's termination.

Harmon appealed to the trial court under the Local Agency Law,[2] contending that the School Board had violated his due process rights by permitting its Solicitor to act as the prosecutor against him and that its findings are not supported by substantial evidence. The trial court held that because the Solicitor had an on-going relationship with the School District, regardless of whether the Solicitor discussed Harmon's case with the School Board, there was the appearance of impropriety by his prosecuting the case against Harmon and reversed Harmon's termination. The trial court also found that the School Board impermissibly commingled the prosecutory and adjudicatory functions by making the initial decision to terminate Harmon based on the administration's recommendation and then hearing Harmon's challenge to the termination. The trial court remanded for a new hearing and prohibited the School District Solicitor from being involved in any manner in the new hearing.[3]

The School Board contends that a school solicitor may present prosecution in a case and be present at a public meeting when the decision on the case is made without violating due process as long as he does not advise the school board in its decision. The Pennsylvania School Board's Association, amicus curiae, contends that because there is no allegation that the Solicitor advised the School Board in its decision, his status as Solicitor is not commingling of prosecutorial and adjudicative functions.

■ In the context of solicitors to school boards, our courts have found that a solici-

---

1. Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 5–514.

2. 2 Pa.C.S. §§ 751–754 provides the right to appeal from a school board's dismissal of a nonprofessional school employee. *See Fiorenza v. Board of School Directors of Chichester School*

*District,* 28 Pa.Commonwealth Ct. 134, 367 A.2d 808 (1977).

3. Because the trial court remanded for a new hearing on the constitutional issue, it did not address the substantial evidence question.

tor's actions in representing a school board was impermissible commingling where the solicitor presided at the hearing and made evidentiary rulings but, at the same time, presented the testimony which tended to prove the school district's case. *English v. North East Board of Education*, 22 Pa.Commonwealth Ct. 240, 348 A.2d 494 (1975). We had not held, however, that any participation by a school solicitor is impermissible. As here, when a solicitor either prosecutes a case or conducts the hearing as an advisor to the school board but not both, there is no impermissible commingling. *Brown v. School District of Cheltenham Township*, 53 Pa.Commonwealth Ct. 483, 417 A.2d 1337 (1980).

In *Brown*, a principal who was demoted contended that it was improper for the solicitor of the school board to act as prosecutor and for a school board member to act as a legal advisor to the school board during its hearing on his demotion. We held that there was no commingling of functions where the solicitor only presented evidence and questioned witnesses on behalf of the school district and did not advise the board during the hearings. *Id.* at 489, 417 A.2d at 1340.

■ Like *Brown*, in *Smith v. Richland School District*, 36 Pa.Commonwealth Ct. 150, 387 A.2d 974 (1978), a teacher challenging his suspension contended that there had been impermissible commingling of the prosecutorial and adjudicatory functions by the school board solicitor. We stated:

> The school board solicitor presented the prosecution of the school board case and the school board president acted as the presiding officer. There are no allegations that the solicitor advised the presiding officer or made evidentiary rulings during the hearing, or that he assisted in the preparation of the adjudication.... Consequently, we find no due process violation to have occurred.

*Id.* at 156, 387 A.2d at 977. Due process is violated by commingling at the hearing or during the decision-making process. However, beyond the limits of the hearing or the decision-making process, the solicitor may act on the school board's behalf. *In re Feld-*

*man*, 38 Pa.Commonwealth Ct. 634, 395 A.2d 602 (1978).

Recently, in *Harris v. School District of Philadelphia*, 155 Pa.Commonwealth Ct. 169, 624 A.2d 784 (1993), we followed our prior decisions concerning counsel to school boards in finding no impermissible commingling. In that case, a principal protesting her demotion contended that there was impermissible commingling of functions where the attorney prosecuting the case before the school board and the attorney serving as legal advisor to the school board were both employed by the Office of General Counsel for the school district. Because she proved no supervisory relationship between the two attorneys and failed to establish even an appearance of impropriety, this court found no due process violation. *Id.* at 174, 624 A.2d at 786.

■ This case is identical to *Brown* and *Smith* because the Solicitor fulfilled the prosecutorial function by presenting the administration's case against Harmon, while counsel from the Pennsylvania School Board's Association advised the School Board in its adjudication, and there is no allegation that the Solicitor was involved in the adjudication in any way.

However, despite our recent decision in *Harris*, Harmon contends that our cases, which hold that when a school solicitor serves only as the person presenting the school district's evidence and there is no due process violation, are no longer valid because of the Supreme Court's decision in *Lyness v. Commonwealth, State Board of Medicine*, 529 Pa. 535, 605 A.2d 1204 (1992). He argues that *Lyness* establishes a proposition that in all cases before an administrative agency, there cannot be even an appearance of bias or a commingling of functions or the due process rights are violated. Because under Section 514 of the Public School Code, 24 P.S. § 5–514, the school board is the entity charged with making a probable cause determination, holding a hearing when requested, and then terminating a non-professional employee if just cause is established, Harmon argues there is an impermissible commingling of functions. Section 514 provides:

The board of school directors in any school district, except as herein otherwise provided, shall after due notice, giving the reasons therefor, and after a hearing if demanded, have the right at any time to remove any of its officers, employees, or appointees for incompetency, intemperance, neglect of duty, violation of any of the school laws of this Commonwealth, or other improper conduct.

We do not agree that *Lyness* requires the result Harmon advances.

In *Lyness*, the State Board of Medicine convened to hear evidence against a physician and determined that formal charges should be lodged and a formal hearing be held.[4] Although a hearing examiner heard the evidence and made a recommendation, *the recommendation was reviewed by the State Board of Medicine with many of the same members participating.* The board then decided to revoke the physician's license to practice medicine. When the physician appealed to this court, we held that there was no per se violation of due process and required a showing of actual bias. Reversing, the Supreme Court stated that whether or not any actual bias existed is inconsequential, and the potential for bias and the appearance of non-objectivity is sufficient to violate the constitution. *Id.* at 548, 605 A.2d at 1210. The Supreme Court held that because the members of the State Board of Medicine made both the decision to prosecute and the final adjudication, they impermissibly commingled their functions and violated the physician's due process right to a fair and impartial tribunal under Article 1 of the Pennsylvania Constitution. *Id.* at 546–47, 605 A.2d at 1210.[5]

■ Harmon maintains that because of the Solicitor's relationship to the School Board, he could neither present the case against him nor advise the School Board because under *Lyness*, that is *per se* an appearance of impropriety and violates his due process rights. We disagree. The existence of a continuing relationship between the solicitor and the school board does not create the appearance of impropriety at the hearing or during the school board's deliberations on the termination where, as here, the Solicitor does not act on behalf of the School Board at the hearing by either advising them or ruling on objections or evidentiary questions and does not advise them during those deliberations. *Lyness* would be applicable, for example, if the Solicitor, unlike here, had been present with the School Board members while they made their decision on the termination and no actual bias would have to be shown in that situation.

■ Moreover, we do not believe *Lyness* is applicable to this case because Section 514 of the Public School Code requires that the school board, as the employer, dismiss employees and then is required to hear the challenge to the dismissal. While *Lyness* required that there be a "wall of separation" between those preferring the charges and those adjudicating the charges in an agency, that does not mean that complete separation has to be observed in every case for due process requirements to be met. The process that is due a person does not always require a trial-type hearing or the complete separation of functions that take place in a judicial proceeding. *See* Davis & Pierce, Administrative Law Treatise, Third Edition, § 9.5 (1994); Friendly, *Some Kind of Hearing*, 123 U.Pa.L.Rev. 1267 (1975). The type of due process hearing that is required is dependent upon the forum, the relationship of the parties, the interests at stake and should be consistent with the goal of reducing the risk of arbitrary government action.[6] *See* Davis & Pierce, *supra* § 9.8. The considerations that led our Supreme court to

4. The State Board of Medicine is an administrative board of the Commonwealth's Bureau of Professional and Occupational Affairs, which is a division of the Department of State. *See Lyness*, 529 Pa. at 537 n. 2, 605 A.2d at 1205 n. 2.

5. The holding of *Lyness* differs from that of the Supreme Court under the 14th Amendment to the United States Constitution in *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712

(1975), holding that a commingling of functions by an agency head does not violate due process.

6. The type of process due under the 14th Amendment to the United States Constitution is analyzed under the standards set forth in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

require a "wall of separation" within the State Board of Medicine are not present here.

The State Board of Medicine, the forum involved in *Lyness,* is one of many independent agencies created by the General Assembly to regulate occupations for the protection of the general public. *See* Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. § 360. Agencies like the State Board of Medicine that both initiate and hear complaints are the type of agency to which the *Lyness* principles apply. These agencies generally have the power to set criteria for licensure and to regulate those practicing in the area and are required to impose discipline or revoke licenses for those who violate the regulations. *See, e.g.,* Sections 8 and 9 of the Medical Practice Act of 1985, Act of Dec. 20, 1985, P.L. 457, 63 P.S. §§ 422.8, 422.9. When licensing is done by these independent agencies, it is impersonal—it doesn't depend on who you are, if you meet the requirements, you receive a license; or, if you violate the regulations, you are subject to penalty, including forfeiture or suspension of your license. Because hearings before these boards may deprive those that appear before it of their ability to practice their profession anywhere and because those that appear before it do so on an "ad hoc" basis, i.e., for that case only, and do not have an ongoing relationship with the board, the proceedings have been held to be one in which a party can expect that the person or persons deciding the case have not taken part in the action to prosecute him or her. However, as our Supreme Court has recognized, a person being disciplined by his employer has no such right.

■ Unlike those engaged in a profession requiring a license, a public employee absent legislation or contract is an employee at will, with no right to continue in employment, and has no due process rights to a hearing before being discharged. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 534, 105 S.Ct. 1487, 1489, 84 L.Ed.2d 494

(1985). In Section 514 of the Public School Code, the General Assembly gave school employees rights not protected by either the state or federal constitution by restricting the school board's unfettered right to terminate without showing just cause and by giving the employee a "protected right" to a hearing on request on whether there is just cause. If just cause exists, then it is within the school board's discretion, like all employers, to terminate an employee if it is in its best interest to do so. Additionally, in light of the continuum of what process is due, the school board's hearing allows them to determine if the termination is correct in light of the testimony and evidence presented by the employee at the hearing (and that decision is ultimately subject to judicial review), thereby satisfactorily ensuring against the risk of arbitrary action. Moreover, unlike a licensing board, when an employee is terminated, it does not prevent him from working, only from working for that employer. Even though Section 514 requires a school board to terminate an employee and hear the challenge to that termination, *Lyness* simply doesn't apply because the "interests" involved in the employment relationships are totally different than an independent agency actions regulating individuals.[7]

We have recognized this distinction and determined that the same type of due process requirements do not apply to school boards as they do to other independent administrative agencies. In *Covert v. Bensalem Township School District,* 104 Pa.Commonwealth Ct. 441, 522 A.2d 129 (1987), this court held that the inherent potential for bias on the part of school boards has long been recognized. We continued:

> The making of the charges presupposes that the members of the board had some knowledge of the facts upon which the charges were based. Unless they had an opinion that the charges, if sustained, would warrant dismissal, they should never have been made.... We do not think that anything more was required of the members of the board than that they could hear

---

7. Insofar as our decision in *Copeland v. Township of Newtown,* 147 Pa.Commonwealth Ct. 463, 608 A.2d 601 (1992) applies *Lyness* in an employment relationship to find a violation of due process because a township board of supervisors both initiated the prosecution and acted as jurists in the adjudication, we specifically reject it.

and determine the charges against appellant on the evidence given before them, uninfluenced by other previous impressions.

*Id.* at 445, 522 A.2d at 131 (quoting *Lomas v. Board of School Directors of Northwestern Lehigh School District,* 66 Pa.Commonwealth Ct. 421, 433, 444 A.2d 1319, 1325 (1982)).

Because *Lyness* involves a type of independent agency established to investigate, prosecute and adjudicate persons with professional licenses, it is distinguishable from, as here, a school board acting not as a regulator but as an employer. Consequently, our prior case law, holding that it is not an impermissible commingling of prosecutorial and adjudicatory functions when a solicitor acts as a prosecutor in the hearing but does not advise the school board during the hearing or in its decisional process, is not affected by *Lyness.*

We find no constitutional violation by the Solicitor's representation of the School District administration at the hearing on Harmon's termination. Accordingly, we vacate the order of the trial court and remand for the trial court to address Harmon's contention that the School Board did not have substantial evidence for its findings.

### ORDER

AND NOW, this 15th day of December, 1994, the order of the Court of Common Pleas of Mifflin County dated March 15, 1993, No. 726 of 1992, is vacated and the case is remanded for a decision on the remaining issue before the trial court.

Jurisdiction relinquished.

SMITH, J., concurs in the result only.

DOYLE, Judge, concurring.

I join with the majority in the result reached, vacating the order of the common

1. *Lyness v. State Board of Medicine,* 529 Pa. 535, 605 A.2d 1204 (1992).

2. "*Lyness* simply doesn't apply because the 'interests' involved in the employment relationships are totally different than an independent agency action regulating individuals." Majority op. at 686.

3. Judge Friedman explains:

pleas court and remanding the case for a hearing to address the issue of substantial evidence. However, I disassociate myself entirely from the majority's rationale that *Lyness*[1] must be distinguished, and that it is distinguishable, on the basis of a dichotomy between state agencies and local agencies, and further, on the dichotomy between the nature of constitutional rights which enure to government employees, on the one hand, and regulated licensees, on the other hand.

The statement of the case so definitively articulated in the forceful dissent by Judge Friedman is the correct view; that is:

The trial court did not hold that the Solicitor commingled the prosecutorial and adjudicative functions. The trial court held that there was an *appearance* of impropriety because the Solicitor who prosecuted the case had an on-going relationship with the School Board. The trial court also found that the School Board impermissibly commingled the prosecutory and adjudicatory functions by deciding to terminate Harmon and then presiding over the termination hearing.

Dissent op. at 689 (footnote omitted; emphasis deleted and added).

But, it is the view of both the dissent and the majority that the holding in *Lyness* is that only the *appearance* of impropriety is sufficient to strike down a prosecutorial administrative proceeding as a per se violation of the constitutional rights of the accused to an administrative fair hearing. Whereas the majority holds that "*Lyness* simply does not apply,"[2] the dissent believes that *Lyness* does apply to the adjudicatory proceedings, but, because there was merely the *potential* for impermissible commingling of advisory and prosecutorial functions, the decision of the school board must be struck down.[3]

In this case, the School Board might be tempted to favor the position advocated by the prosecutor, either consciously or unconsciously, because the prosecutor was also the Solicitor. In the role of Solicitor, the prosecutor advised the School Board on legal matters; thus, the prosecutor, who has gained the confidence and trust of the School Board with respect to legal matters, enjoys an advantage over Harmon by virtue of his enhanced credibility in the eyes of the School Board. It is

It is my view that *Lyness* does not hold that the mere appearance of impropriety, or potential for bias, is a per se violation of due process protections afforded in administrative proceedings; therefore, there is no need to distinguish it. This view is clearly supported by the recent Supreme Court's decision in *Stone and Edwards Insurance Agency, Inc. v. Commonwealth, Department of Insurance,* —— Pa. ——, 648 A.2d 304 (1994):

> Appellants interpret *Lyness* to stand for the proposition that the 'potential' for impermissible commingling, based upon the statutory authority of the Insurance Commission to conduct both functions, results in an unconstitutional deprivation of due process. This is an incorrect interpretation of *Lyness.*
>
> Unquestionably, the 'mere possibility of bias under Pennsylvania law is sufficient to raise the red flag of protection offered by the procedural guaranty of due process.' [*Lyness,* 529 Pa.] at 544, 605 A.2d at 1208. However, the form of impermissible 'appearance' of bias and partiality proscribed in *Lyness* must clearly be one that arises from an *actual* environment of commingled functions. Given the nature and constraints of our various governmental bodies, the question of due process reasonably involves an inquiry into the nature of the process *actually* provided.
>
> . . . .
>
> In the absence of any *actual* commingling, which would give rise to an appearance of bias, partiality or prejudice, Appellants' due process guarantees are being adequately protected.

*Id.* at ——, 648 A.2d at 307–08, (emphasis added). *See also Office of Disciplinary Counsel v. Duffield,* 537 Pa. 485, 644 A.2d 1186 (1994) (where the same principles were applied).

What is most troubling to me in the majority opinion is the language which implies that government employees, because they have been given "rights not protected by either the state or federal constitutions[s]" [4] have somehow forfeited their constitutional rights to administrative due process, and further, that when such an employee is terminated his or her due process rights either rise or fall, or are increased or decreased, by his or her ability to find further employment.[5] The substantive rights being adjudicated by the tribunal should be clearly distinguished from the procedural aspects of the administrative hearing and the individual's constitutional right to a fair hearing and an unbiased tribunal.

KELLEY, J., joins in this concurring opinion.

FRIEDMAN, Judge, dissenting.

I respectfully dissent. I agree that *Lyness v. State Board of Medicine,* 529 Pa. 535, 605 A.2d 1204 (1992), does not apply here, but not for the reasons stated by the Majority. I believe that *Lyness* does not apply here because *Lyness* is an impermissible commingling of functions case.[1] The issue before us is *not* whether the Mifflin County School District (District) Solicitor created an appearance of bias by playing the dual role of prosecutor and adjudicator.[2] The question

---

precisely this advantage that creates *an aura of impropriety* and taints the proceedings. Dissent op. at 689 (emphasis added).

**4.** The majority states:

In Section 514 of the Public School Code, the General Assembly gave school employees rights not protected by either the state or federal constitution by restricting the school board's unfettered right to terminate without showing just cause and by giving the employee a 'protected right' to a hearing on request on whether there is just cause.

Maj. op. at 686.

**5.** The majority contends that "[u]nlike a licensing board, when an employee is terminated, it does not prevent him from working, only from

working for that employer." Maj. op. at 686. I question whether any school employee terminated for drug-related activity would ever be able to find employment with another school district.

**1.** Applying the principles elucidated in *Lyness* to the facts of that case, our Supreme Court stated:

In the instant case, the procedures followed by the Board ... clearly created an unconstitutional intermingling of the prosecutorial and adjudicatory functions in a single entity.

*Lyness,* 529 at 547, 605 A.2d at 1210.

**2.** Indeed, the Solicitor never performed the role of adjudicator. The Solicitor was present when the School Board decided to terminate Harmon,

here is whether there was an appearance of impropriety because the Solicitor who prosecuted the case was also legal advisor to the District Board of Directors (School Board), which adjudicated the case. Because I believe that the School Board may have been tempted to favor the position advocated by the prosecutor, either consciously or unconsciously, because the School Board had vested the Solicitor with the cloak of authority, I would affirm the trial court's reversal of the decision of the School Board and set aside Harmon's termination.

Initially, I note that we are obliged to review the trial court opinion. The trial court did *not* hold that the Solicitor commingled the prosecutorial and adjudicative functions. The trial court held that there was an appearance of impropriety because the Solicitor who prosecuted the case had an on-going relationship with the School Board.[3] (*See* Majority Op. at 683.) The trial court also found that the *School Board* impermissibly commingled the prosecutory and adjudicatory functions by deciding to terminate Harmon and then presiding over the termination hearing.[4] (*Id.*) Nevertheless, on appeal, the School Board argues that the *Solicitor* did not commingle the prosecutorial and adjudicative functions. In addressing this argument, the Majority discusses a series of cases dealing with solicitors and the impermissible commingling of functions, none of which is applicable here.

While it is true that a commingling of functions creates an appearance of bias, there may be other circumstances that also create an appearance of bias. *"Every procedure which would offer a possible temptation to the average [person] as a judge ... not to hold the balance nice, clear, and true between the State and the accused, denies the*

latter due process of law." *In Re Schlesinger*, 404 Pa. 584, 598, 172 A.2d 835, 841 (1961) (emphasis added); *see also Lyness.* The possibility of temptation to favor the prosecutor, either consciously or unconsciously, is sufficient to create an appearance of bias. *Schlesinger.*

In this case, the School Board might be tempted to favor the position advocated by the prosecutor, either consciously or unconsciously, because the prosecutor was also the Solicitor. In the role of Solicitor, the prosecutor advised the School Board on legal matters; thus, the prosecutor, who has gained the confidence and trust of the School Board with respect to legal matters, enjoys an advantage over Harmon by virtue of his enhanced credibility in the eyes of the School Board. It is precisely this advantage that creates an aura of impropriety and taints the proceeding.

Accordingly, I would affirm the decision of the trial court.

---

a prosecutorial function. Later, at the hearing, the Solicitor appeared again in the role of prosecutor.

3. To demonstrate the appearance of impropriety, the trial court relied upon the Rules of Professional Conduct (Rules) and section 2502 of the Judicial Code, 42 Pa.C.S. § 2502. (Appellant's Brief at 35–36.) *See* Rule 1.12 and 3.5 of the Rules. The trial court then stated: "this situation certainly gives the appearance of impropriety." (Appellant's Brief at 36.)

4. Here, the trial court relied upon *Lyness* and *Dussia v. Barger*, 466 Pa. 152, 351 A.2d 667 (1975). The trial court stated: "Such a procedure [where the Board initiated proceedings and then adjudicated their propriety] would appear, under the holdings of *Lyness* and *Dussia*, to be violative of Mr. Harmon's due process rights." (Appellant's Brief at 37.)