# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeremy Askin, Carla Berdnik, Andrea       :
Brown, Victoria Burgess, Amy Carricato,   :
Nick Centofanti, Marco Corona, Darlene    :
Corris, Amy Davies, Chris Dedes,          :
Elizabeth Delawder, Michael Dobies,       :
Michael Dreger, Brandon George, Lori      :
Goldstein, Scott Gralewski, Deborah       :
Hollis, Molly Humphreys, Maisha Johnson,  :
Matthew May, Cara McKenna, Joseph         :
Michalski, Tammy Miles Brown, Joan        :
Murphy, Leslie Perkins, Anthony Pipkin,   :
Marlo Robinson, Richard Slebonick,        :
Jeffrey Spadafore, Shawn Stromberg,       :
Julie Swiderski, Heidi Tomasko, Steven    :
Travanti, Stephanie Turnbull, Anthony     :
Varlotta and Carlton Watson,              :
                                          :
                        Petitioners       :
                                          :
            v.                            : No. 1047 C.D. 2020
                                          : Argued: October 18, 2021
School District of Pittsburgh (Department :
of Education),                            :
                                          :
                        Respondent        :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                           FILED: November 19, 2021


Jeremy Askin and 35 other tenured Assistant Principals (collectively, Assistant Principals) employed by the School District of Pittsburgh (District)

petition for review of the order of the Secretary of Education (Secretary) concluding that the Assistant Principals have not been demoted under Section 1151 of the Public School Code of 1949 (School Code),[1] and affirming the decision of the District's School Board (Board) that the Assistant Principals were not demoted under Section 1151 of the School Code.[2] We affirm.

The stipulated facts may be summarized as follows. On January 1, 2018, all of the eligible Assistant Principals moved up one step in the salary schedule that was in effect at that time. Eligibility was based on their receipt of a satisfactory rating in the prior year, or if their date of hire was prior to July 1, 2017. Reproduced Record (R.R.) at 14a.

On March 1, 2018, the Board approved a new five-step compensation plan[3] for any Assistant Principals hired or promoted after April 1, 2018; all Assistant

---

[1] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §11-1151. Section 1151 states, in relevant part:

> The salary of any . . . professional employe in any school district may be increased at any time during the term for which such person is employed, whenever the board of school directors of the district deems it necessary or advisable to do so, but there shall be no demotion of any professional employe either in salary or in type of position, except as otherwise provided in this act, without the consent of the employe, or, if such consent is not received, then such demotion shall be subject to the right to a hearing before the board of school directors and an appeal in the same manner as hereinbefore provided in the case of the dismissal of a professional employe.

In turn, Section 1101 of the School Code provides, in pertinent part, that "[t]he term '**professional employe**' shall include . . . assistant principals. . . ." 24 P.S. §11-1101 (emphasis in original).

[2] The Assistant Principals also asserted to the Secretary that they were denied due process of law, but the Secretary's disposition of that claim is not at issue in this appeal.

[3] Section 1164(a) and (c) through (e) of the School Code states, in relevant part:
**(Footnote continued on next page…)**

2

(a) As used in this section, the following words will have the following meanings:

**"Administrative compensation"** shall mean administrator salaries and fringe benefits and shall include any board decision that directly affects administrator compensation such as administrative evaluation and early retirement programs.

**"School administrator"** shall mean any employe of the school entity below the rank of district superintendent, executive director, director of career and technical school, assistant district superintendent or assistant executive director . . . .

**"School employer"** shall mean a board of school directors . . . .

\* \* \*

(c) School employers, upon the written request of a majority of the school administrators in the district, shall be required to meet and discuss in good faith with the school administrators on administrator compensation prior to adoption of the compensation plan.

(d) School employers shall be required to adopt written administrator compensation plans which shall apply to all eligible school administrators, as provided in this section, and which shall continue in effect until a time specified in the compensation plan, but in no event for less than one school year.

(e) An administrator compensation plan adopted pursuant to this section shall include, but not be limited to, the following items:

(1) A description of the program determining administrative salaries.

(2) Salary amounts or a salary schedule.

(3) A listing of fringe benefits.

Added by the Act of June 29, 1984, P.L. 438, 24 P.S. §11-1164(a), (c)-(e).

3

Principals hired or promoted prior to April 1, 2018, remained on the old salary schedule. The former salary schedule has 10 steps ranging from $102,087.00 annually at Step 1 to $108,387.00 annually at Step 10, and the new salary schedule has 5 steps ranging from $96,760.00 annually at Step 1 to $99,312.00 at Step 5. The salary of the Assistant Principals on the old salary schedule was frozen as of April 1, 2018. R.R. at 14a-15a.

On March 21, 2018, the Board also changed the Assistant Principals' work year, moving them from the 10-month teacher work year of 208 days to the 12-month principal work year of 250 days. However, the Board also provided the Assistant Principals with 25 annual vacation days in addition to the District's holidays. Additionally, although the Assistant Principals were previously eligible for compensation for summer work or other additional work prior to moving to a 250-day work year, under the new salary schedule, they were no longer eligible to receive compensation for summer work or other additional work. Further, an Assistant Principal temporarily promoted to an acting principal would receive either $250.00 a month, or the difference between his or her current salary and the starting salary for a principal, whichever is higher. R.R. at 15a.

Finally, the date of hire continues to determine when the Assistant Principal is eligible for his or her first salary step. Those hired from January 1 through June 30 of each year are eligible for a salary step the following January 1. Those hired from July 1 to December 31 each year are eligible for a salary step the second following January 1. On December 19, 2018, the Board approved a 2% retroactive annual salary increase for all Assistant Principals, regardless of their date of hire or salary schedule. R.R. at 15a-16a. The Assistant Principals appealed the new pay plan to the Board.

4

On August 20, 2019, a hearing was conducted before the Board's Solicitor and Hearing Officer.[4] *See* Askin Certified Record (A.C.R.) at 063-079. Ultimately, the Board's Hearing Officer determined that the Assistant Principals did not suffer a "salary demotion" under Section 1151 of the School Code and, on November 20, 2019, the Board unanimously voted to adopt a resolution accepting the Hearing Officer's Adjudication. *Id.* at 009.

On December 4, 2019, the Assistant Principals appealed the Board's decision to the Secretary pursuant to Section 1131 of the School Code.[5] On March

---

[4] The parties agreed to bifurcate the hearing of this matter. R.R. at 13a The first hearing was held to determine whether a demotion occurred under Section 1151 and if it was found that a demotion did, in fact, occur, a second hearing would be conducted to determine whether the demotion was proper. *Id.*

[5] 24 P.S. §11-1131. Section 1131 provides, in relevant part:

> In case the professional employe concerned considers himself or herself aggrieved by the action of the [Board], an appeal by petition, setting forth the grounds for such appeal, may be taken to the [Secretary]. . . .
>
> The [Secretary] shall fix a day and time for hearing . . . .
>
> The [Secretary] shall review the official transcript of the record of the hearing before the [B]oard, and may hear and consider such additional testimony as he may deem advisable to enable him to make a proper order. . . .
>
> After hearing and argument and reviewing all the testimony filed or taken before him, the [Secretary] shall enter such order, either affirming or reversing the action of the [Board], as to him appears just and proper.

As the Pennsylvania Supreme Court has stated: "We hold that in an appeal by an aggrieved professional employee under Section 1131 of the School Code, the Secretary is vested with the authority to conduct *de novo* review whether he takes additional testimony or merely reviews the
**(Footnote continued on next page…)**

3, 2020, the Secretary's Hearing Officer conducted a hearing for the reception of evidence and argument of the parties. R.R. at 97a-136a. At the hearing, the Assistant Principals asserted that they were demoted based on the Board's decision by increasing the number of their workdays from 208 per year to 250 per year, thereby eliminating their ability to perform summer or additional work, by freezing their salaries at the current level, and by reducing their per diem rate of pay both currently and into the future due to decreased severance pay for unused sick and vacation days. *Id.* at 113a-115a, 117a-118a. The Assistant Principals also asserted that the District's indefinite salary freeze violates Sections 1142(a)[6] and 1149 of the School Code,[7] which requires the District to provide minimum salaries for the school year and incremental increases for each school year thereafter. *Id.* at 114a, 118a-120a.

---

official record of the proceedings before the board." *Belasco v. Board of Public Education of the School District of Pittsburgh*, 510 A.2d 337, 343 (Pa. 1986).

[6] 24 P.S. §11-1142(a). Section 1142(a) states, in pertinent part:

> (a) Except as hereinafter otherwise provided, all school districts . . . shall pay all . . . principals in the public schools of the district the minimum salaries and increments for the school year 1968-1969 and each school year thereafter, as provided in the following tabulation in accordance with the column in which the professional employe is grouped and the step which the professional employe has attained by years of experience within the school district each step after step 1 constituting one year of service. When a school district, by agreement, places a professional employe on a step in the salary scale, each step thereafter shall constitute one year of service. When a district adopts a salary scale in excess of the mandated scale, it shall not be deemed to have altered or increased the step which the employe has gained through years of service.

[7] 24 P.S. §11-1149. Section 1149 provides, in relevant part: "The increments herein provided for are applicable only where the beneficiaries thereof remain in the service of the same school district."

On September 29, 2020, the Secretary issued an Opinion and Order disposing of the Assistant Principals' appeal. *See* Brief for Petitioners, Appendix A (Secretary's Opinion) at 1-15. With respect to the purported violation of Section 1151 of the School Code, the Secretary determined:

> In *Ahern v. Chester-Upland School District*, 582 A.2d 741 (Pa. Cmwlth. 1990), the Commonwealth Court affirmed the Secretary and held that an increase in the number of workdays [that] school administrators were required to work could not be a demotion under Section 1151 of the School Code, [] even when such a change reduced [the] administrators' per diem or hourly wages because [the] administrators' salaries must be calculated on an annual, not per diem, basis. The Court agreed with the Secretary's reasoning that traditionally, professional employees, including administrators, have been paid on an annual basis and that administrators "are required to successfully organize and manage certain projects throughout the year. These requirements must be met, whether it takes the administrator eight hours per day or twelve hours per day, and regardless of the amount of leave that may be taken by the administrator." *Ahern*, 582 A.2d at 743. The Secretary concluded that because the administrators did not suffer a reduction in annual salary, they were not demoted under the School Code. *Id.*
>
> The Court agreed with the Secretary's analysis and, additionally concluded that it was supported by other sections of the School Code. The Court noted that Section 1142 sets minimum salaries for teachers and administrators, which are based upon the entire school year and not on a per diem basis. 24 P.S. §11-1142(a)[; *Ahern*]. The Court also noted that the form contract for professional employees provided in [S]ection 1121[8]

---

[8] 24 P.S. §11-1121. The form contract provided in Section 1121(c) states, in pertinent part:

"IT IS AGREED by and between .......... Professional Employe, and the [Board] of the [District], that said professional employe shall,

**(Footnote continued on next page…)**

states that professional employees are employed for annual compensation. 24 P.S. §11-1121[;] *Ahern*, 582 A.2d at 744.

The Court concluded, based upon the above-referenced School Code sections that the term "salary" as used in Section 1151 means "annual salary," and that the School Code does not support a per diem rate calculation. [*Ahern*]. Because it was undisputed in *Ahern* that the administrators' annual salaries increased following the implementation of the plan, as they do here, the Court held that the administrators did not suffer a demotion as defined in Section 1151 of the School Code. As a result, the Secretary finds not credible the testimony of Dr. Crenshaw[9] that [the Assistant Principals] have suffered from a reduction in their annual salary.

---

under the authority of the said [B]oard and its successors, and subject to the supervision and authority of the properly authorized superintendent of schools or supervising principal, serve as a professional employe in the said [District] for a term of ... months, for an annual compensation of $........., payable monthly or semi-monthly during the school term or year. . . .

"This contract is subject to the provisions of the '[School Code] and the amendments thereto.

"AND IT IS FURTHER AGREED by the parties hereto that none of the provisions of this act may be waived either orally or in writing, and that this contract shall continue in force year after year, with the right of the [Board] to increase the compensation over the compensation herein stated, from time to time, as may be provided under the provisions and proper operation of the established salary schedule, if any, for the [District], subject to the provisions of law, . . . unless terminated by the professional employe by written resignation . . . or by the [Board] by official written notice presented to the professional employe . . . .

24 P.S. §11-1121(c).

[9] Dr. Crenshaw appeared at the hearing before the Board's Hearing Officer and briefly testified regarding the compensation payments that have been made to the Assistant Principals **(Footnote continued on next page…)**

* * *

> [The Assistant Principals] also argue that they have accumulated unused sick and vacation days and that if at the time of their separation, they are paid their severance in that they still retain those days, they will be less valuable due to the decrease in their per diem pay rate. However, I conclude that there is no guarantee that at the time of severance [that the Assistant Principals] will still retain those unused sick and vacation days as [they] may use them prior to [their] severance. As [the Assistant Principals] are paid an annual salary, I conclude that [the Assistant Principals] unused sick and vacation days retain the same value. [The Assistant Principals] have not lost any compensation.

Secretary's Opinion at 11-12, 13.

Finally, with respect to the purported violation of Sections 1142 and 1149 of the School Code, the Secretary determined:

> The issue [that the Assistant Principals] raise that a "salary freeze" violates Section 1142 of the School Code [] was addressed and decided in *Commonwealth Association of School Administrators v. Board of Education of the School District of Philadelphia*, 740 A.2d 1225 (Pa. Cmwlth. 1999). In that case, the administrators for the School District of Philadelphia argued that the provisions of their collective bargaining agreement abolishing annual salary increases violated Section 1142. The Commonwealth Court held that once the statutory minimums have been met, Section 1142 has been satisfied and other means may be used to determine increases in salary, including an award that eliminates step increments and instead provides for a pay for performance plan. As the statutory minimums have been met here, the Secretary concludes that an elimination of step increments, standing alone, does not violate Section 1142 of the School Code.

---

under the compensation plan in effect at that time, and the impact of the proposed compensation plan that had not taken effect at the time of testimony. *See* A.C.R. at 69.

9

> Moreover, [the Assistant Principals] received a two percent raise in January 2018, as well as 25 additional vacation days. Fringe benefits are statutorily regarded as part of the administrative compensation pursuant to Section 1164 of the School Code. Because [the Assistant Principals] received a two percent pay raise and 25 vacation days, I find the [Board's] testimony credible that [the Assistant Principals were] not subject to a salary freeze.

Secretary's Opinion at 12-13. Accordingly, the Secretary issued an order stating that the Assistant Principals have not been demoted, and affirmed the Board's decision, *id.* at 15, and the Assistant Principals filed the instant appeal of the Secretary's order.[10]

On appeal, the Assistant Principals argue that the Secretary erred in determining that they were not demoted in violation of Section 1151 of the School Code because: (1) the increase in number of days while freezing their salaries results in a loss of earnings per day; (2) the elimination of summer and additional work reduces their annual compensation; and (3) the value of their previously accrued sick and vacation days have been reduced based on the per diem salary reduction. Additionally, the Assistant Principals assert that the Secretary erred in determining that the salary freeze does not violate Sections 1142 and 1149 of the School Code, which provide for additional compensation for each year of service by a professional employee.

With respect to the Assistant Principals' first allegation of error, we have explained:

---

[10] In cases involving the demotion of a professional employee, our scope of review is limited to determining whether: (1) the employee's constitutional rights were violated; (2) the Secretary committed any errors of law; and (3) all necessary findings of fact are supported by substantial evidence. *Brown v. School District of Cheltenham Township*, 417 A.2d 1337, 1338 (Pa. Cmwlth. 1980). The Secretary is the ultimate fact-finder if he makes findings of fact. *Belasco*, 510 A.2d at 343.

> A demotion within the meaning of Section 1151 of the [School] Code requires either a reduction in salary or a change in the type of position. *Horton v. Jefferson County-Dubois Area Vocational Technical School*, [545 A.2d 998, 999 (Pa. Cmwlth. 1988)]. The [professional] employee has the burden of proving that he suffered a demotion. *Jefferson County-Dubois Area Vocational Technical School v. Horton*, [413 A.2d 36, 38 (Pa. Cmwlth. 1980)].

*Ahern*, 582 A.2d at 743 (footnote omitted).

In *Ahern*, as in this case, the school district approved a compensation plan in which the professional employees would receive annual salary increases, but would work a 12-month year rather than a 10-month year. *Id.* at 742. As in this case, in *Ahern* the professional employees "argue[d] that because the number of workdays was increased, they would be paid less per day under the [p]lan than under prior plans, despite an increase in annual salary," and "that this lower per diem rate constituted a demotion." *Id.* at 743 (footnote omitted). Further, as in this case, in *Ahern*, "[t]he Secretary held that [the professional employees'] salaries must be calculated on an annual basis and should not be calculated on a per diem basis," and "concluded that because [the professional employees] did not suffer a reduction in annual salary they were not demoted under the [School] Code." *Id.* Ultimately, this Court specifically stated that "[f]rom these [School] Code sections, we conclude that 'salary' as used in [S]ection 1151 means annual salary and that the language of the section does not support a per diem rate calculation," and that "[b]ecause it is undisputed that [the professional employees'] annual salaries increased following the implementation of the [p]lan, we hold that [the professional employees] did not suffer a demotion as defined in [S]ection 1151 of the [School] Code." *Id.* at 744.

In this case, all of the Assistant Principals' claims supporting the finding of a demotion under Section 1151 are premised upon a purported per diem

11

reduction in salary, including the loss of compensation for summer and outside work, and a purported per diem reduction in the value of previously accrued and future fringe benefits in the form of sick and vacation days. However, as outlined above, such purported per diem decreases will not support a finding of a demotion under Section 1511 of the School Code, and only a loss in annual salary will support such a determination. *Ahern*; *see also generally Walsh v. Sto-Rox School District*, 532 A.2d 547, 548 (Pa. Cmwlth. 1987) ("A demotion is a reassignment to a position which has less importance, dignity, authority, prestige or salary. *Department of Education v. Kauffman*, [343 A.2d 391 (Pa. Cmwlth. 1975)].").

Moreover, the stipulated facts of this case support the Secretary's determination that the Assistant Principals were not demoted within the provisions of Section 1151 under the District's new compensation plan. In relevant part, the parties in this case have stipulated:

> 9.      All eligible Assistant Principals moved up one step on the [old salary schedule] on January 18, 2018. Assistant Principals were eligible for this step movement unless they received an unsatisfactory rating in the prior year, or their date of hire was after July 1, 2017[.]
>
> * * *
>
> 11.     The salary for all Assistant Principals on the "old" salary schedule was frozen as of April 1, 2018.
>
> * * *
>
> 14.     Per the Board's March 21, 2018 action, Assistant Principals moved from a 208-day work year to a 250-day work year, like full Principals. Assistant Principals were provided 25 annual vacation days in addition to all District holidays.

12

15. Assistant Principals are no longer eligible to receive compensation for summer work or additional work, which they had been eligible for prior to moving to a 250-day work year.

\* \* \*

20. On December 19, 2018, the Board approved a two percent (2%) retroactive salary increase for 2018 for all Assistant Principals, regardless of their date of hire or salary schedule.

21. To date, the Board has not authorized step movement for Assistant Principals on either salary schedule in 2019.

R.R. at 14a, 15a, 16a. In sum, the foregoing facts do not demonstrate a loss in annual salary sufficient to support the finding of a demotion under Section 1151 of the School Code, *Ahern*, and the Assistant Principals' claim to the contrary is without merit.

Finally, the Assistant Principals argue that the Secretary erred in determining that their salary freeze does not violate Sections 1142 and 1149 of the School Code, which provide for additional compensation for each year of service by a professional employee. However, as this Court has explained:

> [The union] argues that [the] provision of the [arbitration] award is illegal because the administrators are guaranteed pay increments pursuant to Section 1142 of the [School Code], making it illegal to eliminate those increments. While Section 1142 of the School Code sets out service increments, it does so in the context of a state-mandated minimum salary commensurate with their years of experience in the school district (the highest salary anywhere on the scale is $16,350). Once the state minimums have been met, the provision has been satisfied and nothing in the provision prevents other means to be used to determine increases in salary, including an award that eliminates step increments and instead provides for a

13

pay for performance plan under which school administrators and principals are to receive pay increases based on objective performance criteria. *See Wildrick v. Board of Directors of Sayre Area School District*, [417 A.2d 617 (Pa. 1980)].

*Commonwealth Association of School Administrators*, 740 A.2d at 1230 (footnote omitted).[11]

Because the Assistant Principals' minimum salary exceeds that provided by Section 1142, the District was free to increase their salary by other means, such as the increase in step based on performance, the 2% across-the-board retroactive salary increase, and the addition of 25 vacation days, rather than by a step increase. *Commonwealth Association of School Administrators*. Again, in sum, the Assistant Principals' claim of error in this regard is likewise without merit.[12]

---

[11] The Pennsylvania Superior Court explained the purpose underlying the enactment of the School Code's minimum salary provisions as follows:

> From the inception of legislation mandating salary increases to professional teachers employed within the Commonwealth Public School System, the intent has been to raise the income level of these employees above the then existing salaries established either by action of the local school authorities or by contract with individual employees, or those mandated by the legislature.

*Raymond v. School District of the City of Scranton*, 142 A.2d 749, 751-52 (Pa. Super. 1958).

[12] The cases upon which the Assistant Principals rely, *Mifflinburg Area Education Association v. Mifflinburg Area School District*, 724 A.2d 339 (Pa. 1999), and *Chambersburg Area School District v. Chambersburg Area Education Association*, 811 A.2d 78 (Pa. Cmwlth. 2002), are inapposite. Those cases merely hold that Sections 1142(a) and 1149 of the School Code require a school district to credit professional employees for past years of service *upon rehire*. *See, e.g., Mifflinburg Area Education Association*, 724 A.2d at 343; *Chambersburg Area School District*, 811 A.2d at 83.

14

Accordingly, the Secretary's order is affirmed.

_____
MICHAEL H. WOJCIK, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeremy Askin, Carla Berdnik, Andrea
Brown, Victoria Burgess, Amy Carricato,
Nick Centofanti, Marco Corona, Darlene
Corris, Amy Davies, Chris Dedes,
Elizabeth Delawder, Michael Dobies,
Michael Dreger, Brandon George, Lori
Goldstein, Scott Gralewski, Deborah
Hollis, Molly Humphreys, Maisha Johnson,
Matthew May, Cara McKenna, Joseph
Michalski, Tammy Miles Brown, Joan
Murphy, Leslie Perkins, Anthony Pipkin,
Marlo Robinson, Richard Slebonick,
Jeffrey Spadafore, Shawn Stromberg,
Julie Swiderski, Heidi Tomasko, Steven
Travanti, Stephanie Turnbull, Anthony
Varlotta and Carlton Watson,

                        Petitioners

        v.                    No. 1047 C.D. 2020

School District of Pittsburgh (Department
of Education),

                        Respondent

# **O R D E R**

AND NOW, this 19th day of November, 2021, the order of the Secretary of Education issued September 29, 2020, is AFFIRMED.

                                   _____

                                   MICHAEL H. WOJCIK, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeremy Askin, Carla Berdnik, Andrea : 
Brown, Victoria Burgess, Amy Carricato, : 
Nick Centofanti, Marco Corona, Darlene : 
Corris, Amy Davies, Chris Dedes, : 
Elizabeth Delawder, Michael Dobies, : 
Michael Dreger, Brandon George, Lori : 
Goldstein, Scott Gralewski, Deborah : 
Hollis, Molly Humphreys, Maisha Johnson, : 
Matthew May, Cara McKenna, Joseph : 
Michalski, Tammy Miles Brown, Joan : 
Murphy, Leslie Perkins, Anthony Pipkin, : 
Marlo Robinson, Richard Slebonick, : 
Jeffrey Spadafore, Shawn Stromberg, : 
Julie Swiderski, Heidi Tomasko, Steven : 
Travanti, Stephanie Turnbull, Anthony : 
Varlotta and Carlton Watson, : 
                                  : 
                Petitioners : 
                                  :    No.  1047 C.D. 2020
              v. : 
                                  :    Argued: October 18, 2021
School District of Pittsburgh (Department : 
of Education), : 
                Respondent : 

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                   HONORABLE MICHAEL H. WOJCIK, Judge
                   HONORABLE CHRISTINE FIZZANO CANNON, Judge

## _OPINION NOT REPORTED_

DISSENTING OPINION
BY JUDGE McCULLOUGH                         FILED:  November 19, 2021

I must respectfully dissent because I am not convinced that *Ahern v. Chester-Upland School District*, 582 A.2d 741 (Pa. Cmwlth. 1990), is dispositive given the facts of this case.

In *Ahern*, the professional employees "argue[d] that because the number of workdays was increased, they would be paid less per day under the [p]lan than under prior plans, despite an increase in annual salary," and "that [their] lower *per diem* rate constituted a demotion." *Id*. at 743. The Court in *Ahern* concluded: ***"[b]ecause it is undisputed that [the professional employees'] annual salaries increased*** following the implementation of the [p]lan, we hold that [the professional employees] did not suffer a demotion as defined in [S]ection 1151 of the [Public School] Code [of 1949].[1]" *Id*. at 744 (emphasis added).

In other words, the *Ahern* Court reasoned that because there was no decrease in the professional employees' annual salaries, it was inconsequential that their *per diem* rate happened to decrease.

The issue in *Ahern* is different than the one presented here - there is no stipulation that the Assistant Principals' annual salaries increased. Here, the Assistant Principals argued that their annual salaries decreased **as evidenced by** a *per diem* rate decrease. As "proof" that there was an annual salary decrease, the Assistant Principals offered, *inter alia*, evidence that their *per diem* rate decreased, and they were no longer allowed to work summers and holidays.

*Ahern* did not hold that a *per diem* decrease cannot establish a concomitant annual salary decrease. Rather, it held that **because there was no annual salary decrease**, the *per diem* decrease was of no moment.

---

[1] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §11-1151.

In my view, whether the Assistant Principals' annual salaries decreased is a factual issue, which requires us to look at all the changes, and determine that issue, based on these facts, rather than relying on *Ahern*.

For these reasons, I dissent.

_____
PATRICIA A. McCULLOUGH, Judge