533 A.2d 1150

Rocco Scalzi, Appellant *v.* City of Altoona, Appellee.

Argued October 5, 1987, before Judges CRAIG, DOYLE and BARRY, sitting as a panel of three.

*Anthony C. Busillo, II, Mancke, Lightman &
Wagner,* for appellant.

*Alex E. Echard,* for appellee.

OPINION BY JUDGE DOYLE, December 4, 1987:

This is an appeal by Rocco Scalzi from an order of
the Court of Common Pleas of Blair County, which dis-
missed Scalzi's appeal from a determination of the
Altoona City Council (Council) dismissing Scalzi from
his position as a policeman with the City of Altoona
(City).

The Council found that Scalzi had initiated a physi-
cal and verbal confrontation with another police officer
on August 6, 1983 and had initiated another dispute and
behaved in an insubordinate manner on August 17,
1983. The Council concluded that such actions were
violative of certain regulations of the City Police De-
partment and hence directed that Scalzi be removed.
Scalzi appealed to the common pleas court, which dis-
missed his appeal. Appeal to this Court followed.

Before this Court, Scalzi raises four arguments for
our consideration. Because of our disposition of this
matter we shall only consider two of them. Scalzi first
contends that the mayor's participation as chairman of
Council conducting the hearing after the mayor had, *in-
ter alia,* preferred charges against him and reviewed
testimony prior to the hearing, constituted impermissi-
ble commingling of prosecutorial and adjudicatory func-
tions, and hence was violative of due process. The City

asserts first that this issue was waived because Scalzi failed to comply with Pa. R.C.P. No. 235 (pertaining to giving notice to the Attorney General when the constitutionality of a statute is challenged). Alternatively, the City contends that no impermissible commingling of functions on the part of the mayor occurred because the mayor merely did what various statutes within The Third Class City Code (Code), Act of June 23, 1931, P.L. 932, *as amended*, 53 P.S. §§35101-39701 permit or require him to do.

Taking the waiver issue first, we find the City's contention to be without merit. Pa. R.C.P. No. 235 pertains to situations where the challenge is to the constitutionality of a statute *on its face*. Here, Scalzi does not assert that any provision of the Code is unconstitutional on its face. Rather, he contends that the mayor's actions and the interplay between various statutory duties of the mayor has resulted in a due process violation *in this case*. Accordingly, we hold that Pa. R.C.P. No. 235 is not applicable to this case and, consequently, that Scalzi has not waived his right to assert a denial of due process.

It is not in dispute that the mayor actually preferred the charges against Scalzi. The City maintains that that action was taken pursuant to Sections 4408 and 2007 of the Code, 53 P.S. §§39408, 37007 respectively. Section 4408 pertinently provides:

> All employes subject to civil service shall be subject to suspension by the *director of the department* for misconduct, or violation of any law of this Commonwealth, any ordinance of the city, or regulation of the department, pending action by the city council upon the charges made against any of such employes. On hearing before the city council, where they may be represented by counsel, they may be fined or suspended for

> a period not exceeding thirty days with or without pay, or they may be discharged by city council, if found guilty of the charges made against them. The director of each such department may, for misconduct or violation as aforesaid, suspend any employe of such department for a period of ten days, with or without pay, without preferrring charges and without a hearing of council; but no employe shall be suspended more than one time for the identical or same violation or act of misconduct.

(Emphasis added.) Section 1103 of the Code, 53 P.S. §36103, provides in pertinent part that the mayor "shall be director of the department of public affairs and as such shall have supervision over the city police."

> Section 2007 provides as follows:
>
> Policemen shall obey the orders of the mayor and make report to him, which report shall be laid by him before council monthly. The mayor shall exercise a constant supervision and control over their conduct.

Additionally, Section 1002, 53 P.S. §36002, vests the City's legislative power "in a council *composed of the mayor* and four councilmen." (Emphasis added.) And, Section 901, 53 P.S. §35901, directs that *Council* shall have dismissal power "over all city officers and employes other than elected officers." The due process hearing on the dismissal is then conducted before Council pursuant to Section 4408.

It can be seen that the various statutes authorize the mayor to perform certain prosecutorial functions (*i.e.*, preferring charges) as well as some adjudicatory functions (*i.e.*, participating in the Council hearing at which the propriety of an adverse personnel action is tested). Thus, the Code itself concededly sets up the potential for due process violations. The City asserts that the

mayor's authority to file the charges and then sit on the Council to decide those charges are both supported by the above-cited statutes. We do not dispute that fact. Further, we agree that pursuant to Section 4408 the mayor may, in his prosecutorial role, prefer charges and that the decision to do so is a discretionary one that can rest with him. But those statutory provisions which authorize the mayor to act as a prosecutor cannot be considered in a vacuum. It is clear that the mayor, as a member of City Council, also has the authority to act as an adjudicator. There is, however, no statute that *mandates* that the mayor act as an adjudicator in every case before the Council. Thus, assuming without deciding that the mayor as the head of the Department of Public Affairs is the only individual with the power to prosecute Scalzi, it is clear that he is not also mandated to adjudicate the matter. And where his doing so would result in impermissible commingling, he must recuse himself from sitting as a panel member at Council's adjudicatory proceedings.

It is axiomatic that the legislature does not intend to violate the state or federal constitutions. Section 1922(3) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1922(3). By construing the relevant Code provisions to *permit*, rather than *compel*, the mayor to sit as an adjudicator in instances where he has filed the charges, we conclude that the relevant Code provisions when interfaced are constitutionally sound. We would note, in addition, by way of analogy, that while a judge has a right to hear and decide a case, that right must give way where the potential for bias exists. *See Code of Judicial Conduct*, Canon 3. Accordingly, having determined that the mayor's responsibilities under the Code can be carried out constitutionally, we must now decide on the facts of this case whether the mayor's different roles did, in fact, result in a denial of due process.

First, we note that our state Supreme Court has declared that with respect to administrative agencies, which are responsible for both prosecutorial and adjudicatory functions, when examining the conduct of a particular individual within the agency to assess whether impermissible commingling has occurred, the appropriate inquiry is whether there has been an appearance of bias. *Gardner v. Repasky,* 434 Pa. 126, 252 A.2d 704 (1969). In *Gardner,* the Supreme Court held that where a board member who was an original complainant in a matter then sat on the hearing panel and cast the deciding vote to uphold a police officer's suspension, a due process violation had occurred. Similarly, in *Dussia v. Barger,* 466 Pa. 152, 351 A.2d 667 (1975), the Supreme Court held that where, by statute, the police commissioner ultimately had to decide the guilt or innocence of a suspended officer and where, by regulation, that same commissioner was given responsibility to determine as prosecutor whether charges should be preferred, impermissible commingling occurred. And, in *Donnon v. Downingtown Civil Service Commission,* 3 Pa. Commonwealth Ct. 366, 283 A.2d 92 (1971), where the borough solicitor assisted in preferring charges against a police officer by sitting as adviser to the local civil service commission and also presided over the hearing panel, a similar due process violation was found.

In contrast, it is established that preparation, as opposed to filing of charges, does not prohibit the individual who prepared the charges from sitting on a hearing panel. *Barr v. Pine Township Board of Supervisors,* 20 Pa. Commonwealth Ct. 255, 341 A.2d 581 (1975) (distinguishing *Mallon v. Township of Upper Moreland,* 461 Pa. 241, 336 A.2d 266 (1975)). *See also Appeal of Redo,* 42 Pa. Commonwealth Ct. 468, 401 A.2d 394 (1979). Further, where a board directs that an investiga-

tion be conducted, due process is not per se violated. *Bruteyn Appeal,* 32 Pa. Commonwealth Ct. 541, 380 A.2d 497 (1977); *Rayne v. Edgewood School District,* 19 Pa. Commonwealth Ct. 353, 339 A.2d 151 (1975); *Redo. Redo* additionally establishes that where a Board member signs a policeman's suspension or discharge letter based upon the recommendation of the police chief and the latter individual prefers the charges, the Board member may be involved in hearing the case without a due process violation necessarily occurring. From a review of these cases, the following principle can be gleaned:

1. An individual or Board may conduct a general probable cause investigation and still adjudicate the case.

2. An individual may as a *pro forma* matter sign a suspension or removal letter and still adjudicate the case.

3. An individual may prepare charges and still adjudicate the case.

4. An individual may not prefer charges or actively participate in the investigation and still adjudicate the case.

This last fact pattern is impermissible, because preferring of charges by one vested with discretion to determine if such charges should be filed necessarily requires a commitment to the position that the individual is guilty. Once that position is taken by the prosecutor, the chance that that individual can then assess the evidence impartially is too remote. In the instant case, it is conceded by the City that the mayor did prefer the charges against Scalzi. *See* City's brief p. 14. That being the case, his participation as an adjudicator was constitutionally prohibited. Accordingly, we must remand this case for a new hearing before Council. *Donnon.*

Despite our holding that a remand is needed, we shall, for purposes of judicial economy, consider another

issue of law raised by Scalzi. Scalzi maintains that despite Sections 4408, 1103, and 2007 of the Code, the mayor lacked authority to suspend him and, hence, that his suspension was invalid and that he was entitled to backpay for the period from his suspension until Council removed him (August 18, 1983 to December 27, 1983). Scalzi relies upon *Loftus v. Carbondale*, 405 Pa. 276, 175 A.2d 85 (1961) and *Kramer v. City of Bethlehem*, 5 Pa. Commonwealth Ct. 139, 289 A.2d 767 (1972). *Loftus* held that the mayor of a third-class city was not empowered to suspend an employee of the *fire* bureau. Thus, that case turned upon the Pennsylvania Supreme Court's opinion that the mayor was not head of the department where Loftus was employed, *i.e.*, the fire bureau. The possible applicability of Section 1103 of the Code was not even considered in the opinion. *Kramer*, however, is more difficult to distinguish. It involved a police officer in a third-class city and the question was whether the mayor could change or modify a suspension previously imposed by the chief of police. The *Kramer* court, citing *Loftus*, held that the mayor could not alter the suspension because "such authority is vested in the Director of the Department." *Kramer*, 5 Pa. Commonwealth Ct. at 143, 289 A.2d at 768. *Kramer*, like *Loftus*, did not consider the possible applicability of Section 1103 of the Code. To the extent that *Kramer*, a police case, relied upon *Loftus*, a fire case, we recognize that such reliance was inappropriate and now disavow that analogy. We do note, however, that the language in *Kramer* indicating that the mayor lacked the initial power to suspend was *dictum* inasmuch as the precise issue was the mayor's authority to modify a suspension, not impose one initially. Accordingly, we conclude that the mayor acted within his authority in suspending Scalzi. *See* Section 1103 of the Code.

Based upon the foregoing opinion, the order of the Court of Common Pleas is hereby reversed. This case is remanded for a new hearing.

ORDER

Now, December 4, 1987, the order of the Court of Common Pleas of Blair County in the above-captioned matter is hereby reversed. This case is remanded to the trial court with directions that it remand the case to Council for a new hearing at which the mayor shall not participate as a hearing panel member.

Jurisdiction relinquished.