**Jay and Jennifer BEHM**

v.

**WILMINGTON AREA SCHOOL DISTRICT, Wilmington Area School District Board of Directors, and C. Joyce Nicksick, Appellants.**

Commonwealth Court of Pennsylvania.

Argued April 20, 2010.

Decided May 19, 2010.

William C. Andrews, Pittsburgh, for appellants.

Phillip L. Clark, Jr., New Castle, for appellees.

BEFORE: LEADBETTER, President Judge, and BROBSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

The Wilmington Area School District (District), the Wilmington Area School District Board of Directors (School Board) and C. Joyce Nicksick (collectively, Appellants) appeal from the June 19, 2009, order of the Court of Common Pleas of Lawrence County (trial court) granting the appeal filed by Jay and Jennifer Behm (the Behms) from the School Board's January 26, 2009, adjudication on procedural grounds. We reverse.

During the 2007–2008 school year, Nicksick, who is the District Superintendent, received inquiries from District residents as to whether the Behms and their five children resided within the District. At issue was whether the Behms actually "resided" at 166 Waugh Avenue, which was within the District, or at 668 Leesburg Station Road, which is located in the Grove City Area School District.[1] On May 15, 2008, Nicksick met with the Behms and asked them to fill out a residency affidavit. However, the Behms declined to sign the provided form and, instead, submitted their own, less detailed, affidavit.

In July 2008, an attorney retained by the District notified the Behms that, based on overwhelming evidence, the District Administration (Administration) determined that the Behms had not resided in the District for at least three school years, and, therefore, their children could not attend school in the District for the 2008–2009 school year. The notice advised the Behms of their right to a local agency hearing to challenge the Administration's determination and also indicated that the District would be willing to resolve the matter amicably through the payment of tuition. (R.R. at 1–2.)

The Behms subsequently requested a hearing before the School Board, which was held August 14, 2008. At the hearing, Attorney Phillip Clark represented the Behms, and Attorney Lee V. Price represented the Administration in the prosecutorial function. (School Board Adjudica-

---

1. Section 1301 of the Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, *as amended*, provides that "[e]very child, being a resident of any school district, ... may attend the public schools in his district...." 24 P.S. § 13–1301. Section 1302(a) of the School Code provides that "[a] child shall be considered a resident of the school district in which his parents or the guardian of his person resides." 24 P.S. § 13–1302(a). For purposes of the School Code, the term "reside" has been interpreted to mean "physical presence in a particular place" rather than "primary residence" or "domicile." *Paek v. Pen Argyl Area School District*, 923 A.2d 563, 566 (Pa.Cmwlth.2007) (quoting *In re Residence Hearing Before Board of School Directors, Cumberland Valley School District*, 560 Pa. 366, 370–71, 744 A.2d 1272, 1274–75 (2000)).

tion, ¶¶ 4, 7.) The District Solicitor, Charles Y. Mansell (Solicitor), conducted the hearing on behalf of the School Board and ruled on the admissibility of evidence. The School Board heard testimony from the Behms regarding the time spent, and activities pursued, by the family at each address. In addition, Peter McCann, a private investigator, Bill and Jackie Heinel, neighbors of the Behms at the Waugh Avenue address, and Nicksick all testified. The Administration also entered eight exhibits into the record, including: the residency affidavit provided to the Behms by Nicksick, (Ex. No. 2, R.R. at 226–28); the assessment record for the Waugh Avenue property, provided by the Lawrence County Assessor's office, which noted a change in mailing address from Waugh Avenue to Leesburg Station Road, (Ex. No. 6, R.R. at 245–46); and water usage records obtained from the New Wilmington Municipal Authority, showing quarterly water consumption at the Waugh Avenue address and at other addresses for purposes of comparison, (Ex. No. 7, R.R. at 247–64).[2]

Following the hearing, the School Board voted to uphold the Administration's decision to prohibit the Behms' children from attending school in the District. Finding that the Behms made "numerous unbelievable misstatements of fact under oath," (R.R. at 281), the School Board concluded that the Behms are not sincere in their intent to reside at the Waugh Avenue address. (School Board Adjudication, Conclusions of Law, No. 5.) Further, citing testimony presented by the Behms themselves, the School Board concluded that the Behms did not have a sufficient physical presence at the Waugh Avenue address to establish "residency" as required by section 1302 of the School Code.[3] (School Board Adjudication, Conclusions of Law, Nos. 1–2, 8(a)-(g).)

The Behms appealed to the trial court, and argument on the matter was scheduled for January 26, 2009.[4] In addition to the transcript of testimony and evidence presented before the School Board, the parties presented stipulations to the trial court, paraphrased as follows:

1. That at the time of the Local Agency hearing, the School Board was represented and advised by the Solicitor.

2. That at the time of the Local Agency hearing, the Solicitor advised the School Board on evidentiary issues, including the admission of evidence.

---

2. We note that counsel for the Behms did not object to admission of Exhibit Nos. 2 or 6. (R.R. at 56, 142.) Initially, the Behms' counsel objected to Exhibit No. 7, claiming that the Administration "altered" these records in that the names written on the records were not on the documents produced by the Municipal Authority, (R.R. at 147–48); however, when counsel for the Administration subsequently moved to admit Exhibit No. 7 into the record, counsel for the Behms stated that he had "no objection" to admitting the water records, but he did "have some questions regarding it." (R.R. at 154.)

3. The School Board concluded that:
   (a) Arriving at a house at 10:00 p.m.;
   (b) Departing a house at 6:30 to 7:00 a.m.;
   (c) Spending five waking hours per week at said house;
   (d) With none of the seventeen pets present;
   (e) With no chores to perform by the children;
   (f) With no friends visiting to play; and
   (g) Other related and additional facts presented by Jennifer and Jay Behm; Is not a sufficient physical presence to establish "residency."
   (School Board Adjudication, Conclusions of Law, No. 8(a)-(g), R.R. at 281.)

4. By order dated August 25, 2008, the trial court granted the Behms' petition for a preliminary injunction, thereby allowing the Behms' children to attend school in the District until the merits of their appeal were decided. (R.R. at 295–98.)

3. That during the course of the Local Agency hearing, the Administration, through Nicksick, offered into evidence certain water usage records regarding the Behms and other residents of New Wilmington Borough.

4. That said water usage records were obtained from the Borough of New Wilmington at the direction and behest of the Solicitor by an employee of the Solicitor who was also the Solicitor's wife.

5. That the water usage evidence was gathered by the Solicitor and used in the Local Agency action.

6. That the documentation received from the Lawrence County Assessor's Office and admitted at the Local Agency hearing as Administration Exhibit No. 6 was obtained by the Solicitor, provided to Nicksick and used in the Local Agency action.

7. That the Solicitor prepared an affidavit, admitted as Administration Exhibit No. 2, which the Administration had requested the Behms to sign and which was introduced as evidence against the Behms at the Local Agency hearing. (R.R. at 300–01.)

Before the trial court, the Behms argued that: (1) the School Board's findings were not supported by substantial evidence; (2) the School Board erred in determining that the Behms were not residents of the District for the 2008–2009 school year; and (3) the Behms' due process rights were violated when the Solicitor commingled roles as prosecutor and adjudicator. The basis for this final contention was the Solicitor's involvement in assisting the prosecution of the case prior to the hearing by gathering or preparing evidence (i.e., water usage records, documentation from the Lawrence County Assessor's office and the residency affidavit), supplying this evidence to the prosecutor for use at the hearing, and, thereafter, representing and advising the School Board at the hearing, including ruling on the admission of the same evidence he previously gathered or prepared. (R.R. at 322–23.)

With regard to the first two issues, the trial court found that the School Board's findings were supported by substantial evidence, (R.R. at 413), and that no error of law was committed in determining that the Behms were not residents of the District for the 2008–2009 school year. (R.R. at 415.) As to the final issue, however, the trial court relied on *Lyness v. State Board of Medicine*, 529 Pa. 535, 605 A.2d 1204 (1992), and *Harmon v. Mifflin County School District*, 651 A.2d 681 (Pa.Cmwlth. 1994), to determine that the Behms had been denied their right to due process because the Solicitor's actions and involvement create, at a minimum, "the *appearance* of a commingling of prosecutorial and adjudicatory functions." (R.R. at 416 and 417) (emphasis added).[5]

Referencing the parties' stipulations, the trial court noted that the Solicitor gathered evidence that was used by the Administration in arriving at its determination to prohibit the Behms' children from attending the District and, thereafter, was presented by the Administration at the hearing; the trial court considered that these actions were prosecutorial in nature. The trial court then noted that the Solicitor also acted as the School

5. We note that labeling the *appearance* of commingling as a due process violation misrepresents the principle set forth in *Lyness*. As our supreme court has explained, "the form of impermissible 'appearance' of bias and partiality proscribed in *Lyness* must clearly be one that arises from an *actual* environment of commingled functions." *Stone and Edwards Insurance Agency v. Department of Insurance*, 538 Pa. 276, 281–82, 648 A.2d 304, 307 (1994). (Emphasis in original.)

Board's legal advisor at the hearing and ruled on the admissibility of this same evidence for consideration by the School Board, actions which the trial court considered adjudicatory in nature. The trial court likened the situation to that in *Scalzi v. City of Altoona*, 111 Pa.Cmwlth. 479, 533 A.2d 1150 (1987), *appeal denied,* 520 Pa. 592, 551 A.2d 218 (1988), wherein this court held that an individual may not actively participate in an investigation and then proceed to adjudicate the case. Accordingly, the trial court vacated the School Board's adjudication and remanded the case to the School Board. (R.R. at 417.) Appellants now appeal to this court, arguing that the trial court misapplied relevant case law in determining that the Solicitor impermissibly commingled prosecutorial and adjudicatory functions, thereby violating the Behms' constitutional right to due process.[6]

■ Appellants first maintain that *Lyness* does not apply here, and the trial court erred in utilizing that case to find that impermissible commingling occurred at the Behms' residency hearing. We agree.

In *Lyness,* the State Board of Medicine convened to hear evidence against a physician accused of sexual misconduct and determined that formal charges should be lodged and a formal hearing held. Subsequently, the State Board of Medicine, with many of the same members participating, reviewed the hearing examiner's recommendation and decided to permanently revoke the physician's license to practice medicine. Our supreme court held that, because the members of the State Board of Medicine made both the decision to initiate the professional licensing prosecution and then acted as the ultimate factfinder in determining whether a violation had occurred, they impermissibly commingled their prosecutorial and adjudicatory functions and violated the physician's due process right to a fair and impartial tribunal.[7]

The Behms' complaint here is that the Solicitor, after drafting the District's residency affidavit[8] and obtaining certain public records for the Administration, then represented the School Board by conducting the hearing and making evidentiary rulings. However, as Appellants point out, the Administration, not the Solicitor, determined that the Behms did not reside in the District and could not send their children to school there. Further, at the hearing challenging this determination, Attorney Price, not the Solicitor, conducted the prosecution on the Administration's behalf. Moreover, the School Board, not the Solicitor, sat as fact-finder and rendered the ultimate adjudication as to the Behms'

---

6. Our scope of review of a trial court's decision is limited to determining whether the trial court abused its discretion, committed an error of law or violated constitutional rights. *Yatron by Yatron v. Hamburg Area School District,* 158 Pa.Cmwlth. 204, 631 A.2d 758 (1993), *appeal denied,* 538 Pa. 652, 647 A.2d 906 (1994). In reviewing the adjudication of the Board in this instance, the trial court was limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 754(b) of the Local Agency Law, 2 Pa.C.S. § 754(b).

7. Our supreme court has stated that, "[w]hile not capable of exact definition, the basic elements of procedural due process are adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction of the case." *Commonwealth v. Thompson,* 444 Pa. 312, 316, 281 A.2d 856, 858 (1971).

8. Appellants point out that the residency affidavit was drafted for use by the Administration in all residency cases and was not drafted specifically for the Behms.

entitlement to a public education for their children in the District. The Solicitor did not, and could not, participate in that vote, and there was no claim that he was otherwise involved in the School Board's actual decision making. *See* section 406 of the School Code, 24 P.S. § 4-406 (providing that a school board may appoint a solicitor but that the solicitor may not be a member of the school board). Thus, unlike the dual roles assumed by the State Board of Medicine in *Lyness,* the Solicitor did not initiate the prosecution of, or act as ultimate adjudicator in, the Behms' residency case.[9]

In addition, by applying the same rigid due process protections required by the court in *Lyness* to a residency matter, the trial court has failed to appreciate the critical distinction in the nature of the two cases. In *Harmon,* this court recognized that the due process protections needed in *Lyness*-type cases are not required in every case.[10] We established a "continuum of due process rights" approach, observing

---

**9.** Even in *Lyness,* the court recognized that prosecutorial and adjudicatory functions could overlap without being constitutionally infirm.

> What our Constitution requires, however, is that if more than one function is reposed in a single administrative entity, walls of division be constructed which eliminate the threat or appearance of bias. ... [A] "mere tangential involvement" of an adjudicator in the decision to initiate proceeding is not enough to raise the red flag of procedural due process. Our constitutional notion of due process does not require a *tabula rasa.* However, where the very entity or individuals involved in the decision to prosecute are "significantly involved" in the adjudicatory phase of the proceedings, a violation of due process occurs.

*Lyness,* 529 Pa. at 546–47, 605 A.2d at 1209–10 (citations omitted). Assuming, *arguendo,* that *Lyness* applies in this case, the Solicitor's involvement in the prosecution here (drafting a form affidavit and having his secretary pick up documents and turn them over to the Administration) is more appropriately characterized as the type of "mere tangential involvement" that *Lyness* permits.

**10.** In *Harmon,* a school board accepted the recommendation of the Director of Buildings and Grounds and terminated a school custodian for violating school rules. The school district's solicitor, who was present at the meeting when the school board decided to terminate the custodian, also prosecuted the case on behalf of the district administration, while another attorney conducted the school board hearing and advised the board in its decision. After the school board upheld the termination, the custodian appealed, and the trial court reversed. The trial court held that,

because of the solicitor's ongoing relationship with the school district, his prosecution of the case created the appearance of impropriety. Moreover, the trial court held that, like the medical board in *Lyness,* the school board impermissibly commingled prosecutory and adjudicatory functions by first making the decision to terminate the custodian and then hearing his challenge to the termination.

On further appeal by the school board, this court rejected both of the trial court's holdings. Noting that there was no allegation that the solicitor had advised the school board in its decision, we observed that, in the context of solicitors to school boards, when a solicitor either prosecutes a case or conducts the hearing as an advisor to the school board, but not both, there is no impermissible commingling. Moreover, we concluded that, in *Lyness*-type cases, where a single independent agency serves multiple functions while regulating the licensing of individuals, walls of separation are required between the functions. However, the same due process requirements do not apply to school boards acting, not as a regulator, but as an employer. We stressed that hearings before licensing boards may deprive those that appear before them of their ability to practice their profession anywhere in the Commonwealth, whereas, when an employee is terminated, it does not prevent him from working, but only prevents him from working for that employer. Thus, we concluded that, although a school board is required to terminate an employee and hear the challenge to that termination, *Lyness* simply does not apply. Similarly, *Lyness* is inapplicable to this case because the School Board was not acting as a regulator, and the effect of the adjudication is not to deprive the Behm children of an education, but only to prevent them from obtaining a free education in the District.

that, "[t]he type of due process hearing that is required is dependent upon the forum, the relationship of the parties, the interests at stake and should be consistent with the goal of reducing the risk of arbitrary government action." *Harmon,* 651 A.2d at 685.

Utilizing this approach, Appellants assert that, unlike discipline by agencies regulating licenses (*Lyness*) or employee terminations for cause (*Harmon*), residency hearings are non-disciplinary in nature, and, consequently, this matter is controlled by cases at the opposite end of the due process spectrum. In non-disciplinary cases, such as teacher suspensions resulting from the curtailment of educational programs, our courts have determined that no one is acting in a prosecutorial capacity and that the purpose of such a hearing is merely "to ensure that the reasons for the [action] existed and that all procedural requirements were followed." *Callahan v. Mid Valley School District,* 720 A.2d 815, 817 (Pa.Cmwlth.1998), *appeal denied,* 559 Pa. 680, 739 A.2d 545 (1999); *see also Krupinski v. Vocational Technical School, Eastern Northampton County,* 544 Pa. 58, 674 A.2d 683 (1996).[11] Appellants maintain that the Behms' residency hearing was a similar, non-disciplinary hearing, the sole purpose of which was to ensure that sufficient evidence existed to substantiate the Administration's determination that the Behms were not residents. We agree with

Appellants; therefore, we conclude that the Solicitor did not impermissibly commingle functions in this case.

Moreover, even if a residency matter did include a prosecutorial component, we observe that the Solicitor's challenged actions in the present case do not involve the commingling of prosecutorial and adjudicative functions previously found objectionable in the context of solicitors to school boards. For example, in *English v. North East Board of Education,* 22 Pa.Cmwlth. 240, 348 A.2d 494 (1975), we concluded that a solicitor who represented a school board impermissibly commingled functions when he acted in the dual role of judge and prosecutor by presiding at the hearing and making evidentiary rulings while, at the same time, presenting the testimony which tended to prove the school district's case. However, when a solicitor either prosecutes a case or conducts the hearing as an advisor to the school board, but not both, there is no impermissible commingling. *Harmon; see also Brown v. School District of Cheltenham Township,* 53 Pa. Cmwlth. 483, 417 A.2d 1337 (1980) (holding that there was no impermissible commingling where a solicitor merely presented evidence and questioned witnesses on behalf of the school district, but was not involved in the adjudication). Such was the case at the Behms' residency hearing, where there was a clear distinction be-

---

**11.** In both *Krupinski* and *Callahan,* teachers were suspended as a result of the curtailment of an educational program, and, at the subsequent hearings on the suspensions, the teachers claimed that their due process rights were violated because of impermissible commingling of prosecutorial and adjudicatory roles. The court in each case held that due process rights are interpreted differently in non-disciplinary actions, where no one is acting in a "prosecutorial" role to "obtain some right, or to redress and punish some wrong," *Krupinski,* 544 Pa. at 64, 674 A.2d at 686 (quoting *In re Kearney,* 136 Pa.Super. 78, 7 A.2d 159, 161

(1939)), but, instead, merely presents evidence to establish that the reasons for the suspension exist. Thus, in *Krupinski,* our supreme court held that a board voting to suspend and then reviewing the suspension did not violate due process rights. In addition, this court found no due process violation in *Callahan,* where the school board solicitor represented the interests of the district in supporting the propriety of the suspension, and an attorney in the same law firm was appointed as hearing examiner to rule on evidentiary issues and provide legal advice to the board.

tween Price, who questioned witnesses and presented evidence in favor of the Administration's determination, and the Solicitor, who conducted the hearing for the School Board and ruled on objections to testimony and the admissibility of evidence.

■ We also conclude that the Solicitor's minimal pre-hearing involvement does not raise the specter of bias against the Behms. In *Department of Education v. Oxford Area School District,* 24 Pa. Cmwlth. 421, 356 A.2d 857 (1976), a school superintendent investigated a teacher's involvement in a shoplifting incident, and, based upon the superintendent's recommendation, the school board decided to proceed with charges of incompetency against the teacher. At the dismissal hearing, the superintendent testified as an adverse witness against the teacher and, thereafter, participated in the board's deliberations and its rendering of an ultimate decision to dismiss the teacher. We concluded that the superintendent's actions did not reasonably safeguard the teacher's statutory right to an impartial and unbiased decision. However, we specifically emphasized "that it is the Superintendent's role as an adverse witness that is crucial to this case; *the fact that he initially investigated the shoplifting incident and recommended a hearing is not, in our view, sufficient to indicate any bias that would render his participation in the adjudicatory phase objectionable."* *Id.* at 861 (emphasis added). The extremely limited extent of the Solicitor's participation in the pre-hearing "investigation" here was far less than that allowed by the court in *Oxford Area School District.* Consequently, we are satisfied that it does not rise to the level of "prosecution" that would impede the Behms' right to an impartial tribunal,[12] and we conclude that the trial court erred by relying on *Scalzi* to determine otherwise.

In *Scalzi,* a city council dismissed a city policeman for violating regulations. On appeal, the policeman argued that the mayor's participation as council chairman conducting the hearing, *after the mayor had preferred charges against him and reviewed testimony prior to the hearing,* constituted impermissible commingling of prosecutorial and adjudicatory functions, and hence was violative of due process. To help decide the question, we reviewed relevant case law, from which we gleaned the following principles:

1. An individual or Board may conduct a general probable cause investigation and still adjudicate the case.

2. An individual may as a *pro forma* matter sign a suspension or removal letter and still adjudicate the case.

3. An individual may prepare charges and still adjudicate the case.

4. An individual may not prefer charges or actively participate in the investigation and still adjudicate the case.

*Scalzi,* 533 A.2d at 1153. Because the mayor preferred the charges against the policeman, we held that his participation as an adjudicator was constitutionally prohibited under the last fact pattern. We observed that the preferring of charges by one vested with discretion to determine if such charges should be filed necessarily requires a commitment to the position that the individual is guilty, and we reasoned that, once that position is taken by the prosecutor, the chance that that individual

---

12. Indeed, a review of the hearing record reveals no bias on the part of the Solicitor; he was extremely evenhanded in his rulings on objections by the parties, and, as noted previously, counsel for the Behms did not object to the Administration's admission of the documents prepared or obtained by the Solicitor.

can then assess the evidence impartially is too remote. *Scalzi.*

As stated, it was the Administration, not the Solicitor, who determined that the Behms did not reside in the District. Therefore, under the analysis in *Scalzi,* the Solicitor's actions could be viewed as impermissible commingling only if his participation in the investigation was such that he became committed to the position that the Behms did not reside in the District and, thereafter, actually adjudicated the merits of the Behms' residency. There is no indication that this was the case. In fact, as Appellants note, the evidence gathered at the direction of the Solicitor is that which would be expected to be collected in a general probable cause investigation into complaints of non-residency. (Appellants' brief at 27.) As such, any exposure to it prior to the Behms' hearing would not prohibit the Solicitor from serving as a nonvoting advisor to the School Board. *Scalzi.*

Accordingly, for these reasons, we reverse.

### ORDER

AND NOW, this 19th day of May, 2010, the order of the Court of Common Pleas of Lawrence County, dated June 19, 2009, is hereby reversed.