IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Terry Kinavey, : 
           : No. 1081 C.D. 2015
              Appellant : Argued: April 11, 2016
           :
           v. :
           :
West Jefferson Hills School District :
and Board of Directors of :
West Jefferson Hills School District :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                FILED: June 15, 2016

Terry Kinavey (Kinavey) appeals from an order of the Court of Common Pleas of Allegheny County (trial court) that denied her statutory appeal from a determination of the Board of Directors (Board) of West Jefferson School District (District) to remove her from the position of superintendent. The trial court determined there was no impermissible commingling conduct between prosecutorial and adjudicatory functions and that substantial evidence supported the Board's determination that Kinavey failed to comport herself consistent with the requirements of the position of superintendent. Kinavey contends the trial court erred by: concluding that there was no impermissible commingling; not making findings of fact in support of this conclusion; and, upholding the Board's dismissal of her. Upon review, we affirm.

## I. Background

Kinavey held the position of superintendent of the District for a five-year term, which she began in July 2008. On November 17, 2009, the Board suspended Kinavey without pay. By letter dated November 20, 2009, the District's Solicitor, Ira Weiss (Solicitor), sent Kinavey a formal statement of charges and notice of hearing pursuant to Section 1080 of the Public School Code of 1949 (School Code).[1] The statement of charges contained 15 enumerated charges for conduct the Board deemed "incompetence, neglect of duty, intemperance, and immorality" in violation the School Code. Reproduced Record (R.R.) at 14a. The Board cited a lack of candor and dishonesty to the Board, as well as a pattern of plagiarism in carrying out her duties as superintendent.

The Board hired Michael Palumbo to serve as both special counsel to the Board and hearing officer (Hearing Officer) for the hearing. Solicitor's office prosecuted the charges. Because Solicitor was a witness in the case, his colleague, Al Lubelski, acted as lead prosecutor. Midway through the hearing, the Board replaced Lubelski with an outside law firm. Certified Record (C.R.), Vol. IV, at 991.

Hearing Officer held 15 public hearings to determine whether Kinavey should be dismissed from employment. The District presented evidence

---

[1] Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §10-1080. This section provides:

> District superintendents and assistant district superintendents may be removed from office and have their contracts terminated, after hearing, by a majority vote of the board of school directors of the district, for neglect of duty, incompetency, intemperance, or immorality, of which hearing notice of at least one week has been sent by mail to the accused, as well as to each member of the board of school directors.

24 P.S. §10-1080.

and witness testimony in support of the charges. In turn, Kinavey presented evidence and witness testimony on her behalf, including her own testimony. At the close of the hearings, both parties presented proposed findings of fact and conclusions of law. Based on the evidence presented, Hearing Officer issued a decision, containing 198 findings of fact and 37 conclusions of law, recommending Kinavey's dismissal.

The Board met in executive sessions in August and September 2010 to deliberate and adjudicate the charges. Present at the sessions were Hearing Officer and most members of the Board,[2] except for David Graham and Shauna D'Alessandro who served as witnesses and recused themselves from participation in the deliberations and adjudication. Board's Adjudication, 9/29/10, Findings of Fact (F.F.) Nos. 4, 15; *see* C.R., Vol. I, at 7; C.R., Vol. IX, at 2263-64. The Board then issued an adjudication in which it adopted the findings and conclusions of Hearing Officer, which are summarized as follows.

In the summer of 2009, the District posted a vacancy for an English Teacher/Reading Specialist, a dual certification position, for the 2009-2010 school year at Thomas Jefferson High School. Kinavey was involved in the interview and hiring process. Six candidates applied for the position. Following first-level interviews, two candidates did not advance, two candidates withdrew, and two candidates advanced to the second level. Denise Breisinger (Breisinger), who was a resident of and a substitute teacher for the District, was one of the two candidates that advanced. F.F. Nos. 25, 27, 31, 33, 35, 36.

---

[2] Throughout the original hearing, the Board members were Deborah Pozycki, Marianne Neel, Anthony Angotti, Alan Caponi, Anna Louise Lilley, Carolyn Bourgeois, Anthony Rash, Shauna D'Alessandro, and David Graham. F.F. No. 3; *see* C.R., Vol. IX, at 2257-2261 (Verifications); C.R., Vol. II, at 703.

A five-person interview team, which included Kinavey, Hamsini Rajgopal (Rajgopal), human relations director, Timothy Hasselhoff, principal at the high school, Paul Ware, associate principal at the high school, and Suzan Petersen, assistant to the superintendent, conducted second-level interviews of the two remaining candidates. Breisinger garnered no negative comments. Standard practice is for the interview team to reach a consensus as to the candidate to recommend to the Board by presenting a personnel sheet, commonly referred to as a "blue" sheet. However, the team could not reach a consensus on the candidate for the position. Kinavey did not tell the interview team she could not recommend Breisinger. F.F. Nos. 23, 24, 32, 39, 45, 46.

Rajgopal sought advice from Solicitor, who advised her to select the best candidate. However, Rajgopal understood Solicitor's advice to be that if the team offered the job to "Candidate A" and she turned it down, the job should go to "Candidate B," which was Breisinger, and she relayed this information to the team. The team offered the position to Candidate A, but she declined. F.F. Nos. 47-50.

At a meeting held July 21, 2009, Kinavey stated Breisinger would be the candidate recommended to the Board based on Solicitor's advice that the District "had to hire" Breisinger. F.F. Nos. 54. The team reached a consensus that Breisinger would be the candidate recommended for the position to the Board. At the July 24th meeting, Kinavey reiterated that Breisinger would be the recommended candidate. Kinavey did not indicate to the interview team that she was withdrawing the recommendation. While Kinavey was on vacation, team members acted on the assumption that Breisinger was going to be hired for the position, and they prepared a blue sheet containing Breisinger's name for the

4

Board's approval and assigned Breisinger a teacher mentor. F.F. Nos. 24, 56, 57, 61-66.

However, when Kinavey returned from vacation and discovered Breisinger's name on the blue sheet, she met with Solicitor and expressed her view that she did not recommend Breisinger. Kinavey informed Solicitor that, when Breisinger previously substituted for the District, she requested to have her hours of work altered. Kinavey also relayed that, prior to serving as superintendent, she served on a second-level team when Breisinger unsuccessfully applied for a teaching position; Breisinger and her husband complained to the then-superintendent that Kinavey did not hire Breisinger because of personal animus. Solicitor advised Kinavey it was her prerogative as superintendent not to recommend a candidate, but he warned of a "real risk" of litigation if the District did not hire Breisinger because she had the requisite certifications and was qualified for the position. On August 13, 2009, Kinavey directed the removal of Breisinger's name as well as the English Teacher/Reading Specialist position from the blue sheet. After the meeting, the position was reposted as an English-only position. F.F. Nos. 72, 75, 78-80, 84, 85, 88, 89, 129.

At the Board meeting on August 18, 2009, the Board reviewed the blue sheets, which did not contain Breisinger's name or the position of English Teacher/Reading Specialist. Kinavey did not inform the Board that Breisinger's name appeared on and was removed from the blue sheet, that she removed the English Teacher/Reading Specialist position from the blue sheet, or that Solicitor warned her of the risk of litigation if the District did not hire Breisinger. F.F. Nos. 92-94.

5

A week later, at a public meeting of the Board, supporters of Breisinger questioned the Board's decision not to hire Breisinger and spoke in favor of her candidacy. Although Kinavey attended the meeting, she did not offer any explanation regarding the removal of Breisinger's name from the blue sheet. She also offered no explanation as to why the position was changed from English Teacher/Reading Specialist, a dual certification position, to English Teacher, a single certification position. She did not inform the Board that the interview team had formed a consensus to recommend Breisinger for the position. F.F. Nos. 97-102.

At an executive session, the Board[3] asked Kinavey whether Breisinger's name appeared on a blue sheet. Kinavey initially responded it had not. She then explained Breisinger's name was placed on a blue sheet by Rajgopal by default because she was the last candidate standing when Candidate A withdrew. Kinavey led the Board to believe Candidate A withdrew from consideration while she was on vacation. However, Kinavey knew Candidate A declined the position prior to leaving for vacation. Kinavey did not tell the Board that she advised the interview team that Breisinger would be the recommended candidate. F.F. No. 112, 113, 116, 117, 119, 126.

The Board directed its Solicitor to conduct an investigation of Kinavey and the events surrounding the interview and hiring process. Solicitor advised the Board that his initial investigation revealed no wrongdoing and that

---

[3] All members of the Board, except for Bourgeois and Rash who were not Board members in 2009, participated in the executive sessions held in August and September 2009. *See* C.R., Vol. I, at 278; *see also* R.R. at 184a.

Kinavey acted within the scope of her authority when she did not recommend Breisinger for the position. F.F. Nos. 121, 122.

After Solicitor made his initial report, the Board directed Solicitor to conduct a second investigation in response to new information. Significantly, Solicitor's second investigation uncovered additional facts regarding the circumstances surrounding the interview team's consensus and that not all of the team shared Kinavey's negative assessment of Breisinger's capabilities. Solicitor also uncovered alleged acts of plagiarism unrelated to Breisinger's hiring. Solicitor determined cause existed to remove her. F.F. Nos. 123-125, 167, 168.

Ultimately, the Board found Kinavey was not truthful or forthright in her representations to the Board about the hiring process. The Board rejected Kinavey's sworn testimony as "untruthful" because it was contradicted by District administrators. F.F. No. 157; *see* Board's Adjudication, Conclusion of Law No. 35. Specifically, Kinavey did not inform the Board of: the consensus to recommend Breisinger for hire; the removal of Breisinger's name from the blue sheet prior to the Board meeting; the known risk of litigation if Breisinger was not hired; or that she removed the English Teacher/Reading Specialist position from the blue sheet and posted it as English-only position. F.F. Nos. 92-94, 100-105.

Moreover, Kinavey led the Board to believe that Candidate A withdrew from consideration while she was on vacation when she knew prior to leaving for vacation that Candidate A declined the position, leaving Breisinger as the last candidate. F.F. No. 116, 117. Kinavey also misrepresented a lesson plan that Breisinger presented during the second-level interview and led the Board to believe the entire interview team held a negative assessment of Breisinger, which was not so. F.F. No. 137.

7

The Board found Kinavey was motivated by personal bias against Breisinger based on prior interactions. Kinavey used the pretenses such as an undersized interview pool and the need to repost the position as an English position as a ruse to avoid recommending Breisinger for hire. Although Breisinger was qualified for the position, Kinavey allowed her personal bias against Breisinger to adversely impact her decision-making and her communications with the Board about the hiring process. F.F. Nos. 129, 130, 133.

In addition, the Board found four specific instances of plagiarism. Specifically, in the summer of 2009, Kinavey distributed written materials to the District without offering attribution to the original source of the material. Three of the plagiarized items were submitted by Kinavey to her secretary as handwritten items for typing. Kinavey copied these letters in her own handwriting to make it appear that she wrote the text herself. The plagiarized materials offended the morals of the District and set a bad example for the youth served by the District. F.F. Nos. 162-165, 181, 182.

In short, the Board found that many of the charges against Kinavey were proven. Namely, Kinavey displayed a lack of candor and dishonesty to the Board, and she engaged in plagiarism. The Board determined Kinavey's conduct constituted neglect of duty and immorality under Section 1080 of the School Code, and it voted to dismiss her as superintendent of the District.

From this decision, Kinavey filed a statutory appeal with the trial court. Kinavey argued, among other things, that the record was incomplete because she was denied access to certain evidence. The trial court agreed and remanded the matter to the Board to make a full and complete record. Specifically, the trial court ordered: the production of extensive electronically-stored

8

information; the recusal of two Board members (D'Alessandro and Graham) from the remand hearing; and authorization to recall D'Alessandro as a witness. The trial court further directed Hearing Officer to exercise his discretion in determining whether Hearing Officer or District's counsel should conduct *voir dire* of the Board members.

On remand, Hearing Officer conducted six days of public hearings, took additional testimony, admitted voluminous electronic evidence, and conducted *voir dire* of the Board members. Based on the additional evidence adduced, the Board[4] again determined Kinavey was unfit to serve as superintendent by resolution dated August 20, 2013. R.R. at 105a-112a.

Kinavey again appealed to the trial court. She claimed the Board violated her due process rights because Solicitor and members of the Board engaged in impermissible commingling conduct between the prosecutorial and adjudicatory functions. She also challenged the sufficiency of the evidence supporting her termination from employment.

The trial court bifurcated the appeal, at Kinavey's request, to first consider the issue of whether Kinavey's due process rights were violated by the alleged impermissible commingling. The trial court heard oral argument on the issue and afforded the parties the opportunity to supplement the record with additional evidence. By order dated October 17, 2014, the trial court found there was no impermissible commingling conduct on the part of the Board or Solicitor.

Thereafter, the trial court proceeded on the underlying merits of the appeal. The trial court found that the Board created a full and complete record and

---

[4] Rash did not participate in the deliberations or adjudication of the remand hearing because he was no longer a member of the Board. *See* R.R. at 184a, 554a.

that the Board's necessary findings of fact were supported by substantial evidence. By final order dated June 5, 2015, the trial court affirmed the determination of the Board to remove Kinavey.

Kinavey filed an appeal to this Court challenging both orders.[5] At the direction of the trial court, Kinavey filed a concise statement of errors complained of on appeal pursuant to Pa. R.A.P. 1925(b). The trial court filed an opinion in support of its orders.

## II. Issues

On appeal, Kinavey presents three issues. First, she contends the trial court erred by not making findings of fact in relation to the impermissible commingling issue, even though it took additional evidence and conducted a *de novo* hearing on the issue. Second, she claims the trial court erred in concluding that neither the Solicitor nor Board members engaged in impermissible commingling conduct such that Kinavey's constitutional rights were violated. Finally, she contends substantial evidence does not support the Board's dismissal.

## III. Discussion
### A. Findings of Fact

First, Kinavey contends the trial court erred by failing to make any findings of fact to support its October 17, 2014, order disposing of the commingling issue. The trial court accepted supplemental evidence and conducted

---

[5] When a trial court does not take additional evidence, our review of a local agency's adjudication is limited to determining whether constitutional rights were violated, whether errors of law were committed or whether the decision is not supported by substantial evidence. 2 Pa. C.S. §754(b); *Spencer v. City of Reading Charter Board*, 97 A.3d 834, 839 (Pa. Cmwlth. 2014). Where the trial court considers additional evidence or conducts *de novo* review on a particular issue, our review is whether the trial court abused its discretion, committed an error of law or violated constitutional rights. *Mento v. Board of School Directors of Montour School District*, 35 A.3d 66, 68 n.3 (Pa. Cmwlth. 2011).

10

a *de novo* review on the commingling issue. Consequently, she claims the trial court was required to make detailed findings of fact on the commingling issue as if it were an agency. Kinavey asserts the trial court merely entered an order declaring there was no impermissible commingling without making any findings in support. The trial court compounded this error when it did not include sufficient findings in its Rule 1925(a) opinion.

Section 754 of Local Agency Law provides:

> In the event a full and complete record of the proceedings before the local agency was not made, the court may hear the appeal *de novo*, or may remand the proceedings to the agency for the purpose of making a full and complete record or for further disposition in accordance with the order of the court.

2 Pa. C.S. §754(a). "All adjudications of a local agency shall be in writing, shall contain findings and the reasons for the adjudication, and shall be served upon all parties or their counsel personally, or by mail." Section 555 of Local Agency Law, 2 Pa. C.S. §555.

Generally, a local agency must render an opinion delineating sufficient findings to support its conclusions in order to provide for meaningful judicial review. *Borough of Youngsville v. Zoning Hearing Board of Youngsville*, 450 A.2d 1086, 1089 (Pa. Cmwlth. 1982). However, "specific findings of fact are not required" if the opinion provides "an adequate explanation" for the resolution of the issues involved. *Id.* Moreover, "[a] court, acting *de novo*, has full fact finding functions and it is implicit in Section 754(a) that a court acting *de novo* is not restricted in its fact finding function." *Pittsburgh Board of Public Education v. MJN by NJN*, 524 A.2d 1385, 1388 (Pa. Cmwlth. 1987), *appeal denied*, 541 A.2d 1392 (Pa. 1988).

11

Here, upon determining the Board did not make a full and complete record on the issue of impermissible commingling, the trial court conducted *de novo* review pursuant to Section 754 of Local Agency Law. In furtherance of that review, the trial court accepted additional evidence and acted as the factfinder, rather than as an appellate court. *See Leasure v. Borough of Trafford*, 531 A.2d 559, 560 (Pa. Cmwlth. 1987). The trial court issued an opinion with findings of fact.

Specifically, the trial court found there was no impermissible commingling conduct on the part of the Board or Solicitor. With respect to the Board, it found:

> [Kinavey] alleges that members of the school board conducted their own investigation of [Kinavey] and the hiring process for the English/Reading position by discussing the situation with administrators. [Kinavey] also alleges that the school board commingled their [sic] prosecutory and adjudicatory functions by providing information to [Solicitor] during his investigation of [Kinavey]. I do not find that these actions rise to the level of impermissible commingling and I committed no error in finding so.

Trial Court Opinion, 8/17/15, at 4; R.R. at 1265a.

With respect to Solicitor, it found: the Board was represented by and advised by Hearing Officer, not by Solicitor; there was no allegation that Solicitor was involved in the adjudication in any way; the Board retained separate counsel to represent it during the deliberations and in the decision-making process; and, Solicitor did not preside at the hearing or make evidentiary rulings, nor did he participate in the deliberations to terminate Kinavey. Trial Court Opinion, at 5; R.R. at 1266a. The trial court further found Kinavey's due process rights were not violated. *Id*.

12

Although the trial court set forth its findings in narrative form as opposed to enumerated form, we are aware of no authority specifying the stylist form. Upon review, the trial court's Rule 1925(b) opinion comports with the requirements under Local Agency Law and provides an adequate explanation for the resolution of the commingling issue for appellate review.

## B. Commingling

Next, Kinavey contends her due process rights were violated because the Board and Solicitor engaged in impermissible commingling of investigatory, prosecutorial, and adjudicatory functions. According to Kinavey, the law requires a rigid separation between those who investigate and prosecute and those who act as the tribunal in an employee disciplinary case. Board members and Solicitor ignored the required separation of roles throughout the second investigation and during the original hearing when the record and findings were made.

More particularly, Kinavey claims Board members were impermissibly involved in the investigation and prosecution. With regard to the investigation, she claims Board members not only provided information used by Solicitor in his investigation, but they conducted their own investigations. Board members directed and supervised Solicitor during the investigation. They also requested and received details of the investigation as well as legal advice regarding the potential discharge of Kinavey from Solicitor during the investigation. Kinavey also claims Board members were committed to the position that she should be discharged throughout the investigation.

In addition, Kinavey contends that Board members: strategized with Solicitor to limit witnesses to be called at the hearing; engaged in *ex parte* communications with District administrators, who were called as prosecution

witnesses; and used their own recollection of events to evaluate the testimony. According to Kinavey, Board members communicated with and received advice from Solicitor, not Hearing Officer, after Hearing Officer was hired as counsel for the Board. Although the Board hired another attorney to prosecute, the Board allowed Solicitor to serve as a co-prosecutor throughout the original hearing and to testify in that hearing as one of the main prosecutorial witnesses regarding his communications with Kinavey.

Due process is violated by impermissible commingling at the hearing or during the decision-making process. *Harmon v. Mifflin County School District*, 651 A.2d 681, 684 (Pa. Cmwlth. 1994). "However, beyond the limits of the hearing or the decision-making process, the solicitor may act on the school board's behalf." *Id.* The law is clear that "when a solicitor either prosecutes a case or conducts the hearing as an advisor to the school board, but not both, there is no impermissible commingling." *Behm v. Wilmington Area School District*, 996 A.2d 60, 66 (Pa. Cmwlth. 2010), *appeal denied*, 23 A.3d 1057 (Pa. 2011); *accord Harmon*, 651 A.2d at 684; *Brown v. School District of Cheltenham Township*, 417 A.2d 1337, 1340 (Pa. Cmwlth. 1980).

In *Behm*, an attorney represented the administration in the prosecutorial function, but he did not serve as the hearing officer, rule on objections to testimony or admissibility of evidence. Rather, the district solicitor conducted the hearing on behalf of the school board and made evidentiary rulings. The school board rendered the ultimate determination. As there was a clear distinction between prosecutorial and adjudicatory roles, we concluded there was no impermissible commingling. 996 A.2d at 66.

14

Likewise, in *Harmon*, the solicitor fulfilled the prosecutorial function by presenting the administration's case against a suspended custodian, while counsel from the Pennsylvania School Board's Association advised the school board in its adjudication. There was no allegation that the solicitor was involved in the adjudication in any way. The mere existence of a continuing relationship between the solicitor and the school board did not create the appearance of impropriety at the hearing or during the school board's termination deliberations. We explained the solicitor did not act on behalf of the school board at the hearing by "either advising them or ruling on objections or evidentiary questions and [did] not advise them during those deliberations."[6] 651 A.2d at 685. Thus, we found no constitutional violation by the solicitor's representation of the school district administration at the hearing on custodian's termination. *Id.*

Similarly, in *Brown*, a principal who was demoted, contended that it was improper for the solicitor of the school board to act as prosecutor and for a school board member to act as a legal advisor to the school board during the demotion hearing. We held that there was no impermissible commingling of functions where the solicitor only presented evidence and questioned witnesses on behalf of the school district and did not advise the board during the hearings or deliberation. 417 A.2d at 1340.

However, in *Department of Education v. Oxford Area School District*, 356 A.2d 857 (Pa. Cmwlth. 1976), we found impermissible commingling occurred.

---

[6] In *Harmon*, this Court specifically rejected application of *Lyness v. Commonwealth, State Board of Medicine,* 605 A.2d 1204 (Pa. 1992), because "the 'interests' involved in the employment relationships are totally different than an independent agency actions regulating individuals." 651 A.2d at 686. Thus, the same type of rigid due process requirements do not apply to school boards as they do other independent administrative agencies. *Id.*

There, a school superintendent investigated a teacher's involvement in a shoplifting incident. Based upon the superintendent's recommendation, the school board decided to charge the teacher with incompetency and immorality. *Id*. at 859. At the dismissal hearing, the superintendent testified as an adverse witness against the teacher and then participated in the board's deliberations, which resulted in dismissal of the teacher. We concluded that the superintendent's actions did not reasonably safeguard the teacher's statutory right to an impartial and unbiased decision. *Id*. at 861. However, we specifically emphasized "that it is the [s]uperintendent's role as an adverse witness that is crucial to this case; the fact that he initially investigated the shoplifting incident and recommended a hearing is not, in our view, sufficient to indicate any bias that would render his participation in the adjudicatory phase objectionable." *Id*.

> In essence, the following principles can be gleaned from this case law:
>
> 1. An individual or [b]oard may conduct a general probable cause investigation and still adjudicate the case.
> 2. An individual may as a *pro forma* matter sign a suspension or removal letter and still adjudicate the case.
> 3. An individual may prepare charges and still adjudicate the case.
> 4. An individual may not prefer charges or actively participate in the investigation and still adjudicate the case.

*Scalzi v. City of Altoona*, 533 A.2d 1150, 1153 (Pa. Cmwlth. 1987), *appeal denied*, 551 A.2d 218 (Pa. 1988); *accord Behm*, 996 A.2d at 67.

Applying these principles here, the trial court did not err in determining no impermissible commingling occurred. As the employer of Kinavey, the Board followed its statutory duties by conducting a probable cause

16

investigation regarding the charges against Kinavey, holding a hearing on those charges, and then terminating Kinavey based on the evidence.

The evidence Solicitor gathered in his second investigation is that which would be expected to be collected in a general probable cause investigation. To the extent Board members participated in the investigation, such is not prohibited by the Board in making a probable cause determination. *See Scalzi*, 533 A.2d at 1153*; Lower Providence Township v. Nagle*, 469 A.2d 338, 343 (Pa. Cmwlth. 1984); *Lomas v. Board of School Directors of Northwestern Lehigh School District*, 444 A.2d 1319, 1324 (Pa. Cmwlth. 1982). To make an informed decision, each Board member was required to have sufficient knowledge of the facts surrounding each of the charges. Indeed, as this Court explained in *Lomas*:

> The making of the charges presupposes that the members of the board had some knowledge of the facts upon which the charges were based. Unless they had an opinion that the charges, if sustained, would warrant dismissal, they should never have been made. That a member of the board had an opinion at the time the charges were preferred against appellant would not disqualify him from participating in a hearing on those charges, or invalidate the proceedings. We do not think that anything more was required of the members of the board than that they could hear and determine the charges against appellant on the evidence given before them, uninfluenced by other previous impressions.

444 A.2d at 1325 (quoting *Flannery Appeal*, 178 A.2d 751, 754 (Pa. 1962)).

Contrary to Kinavey's assertions, there is no evidence to support that the Board members who adjudicated the case were committed to the position that Kinavey was guilty as charged throughout the investigation. The Hearing Officer conducted extensive *voir dire* of the Board members. *See* R.R. at 1238a-1246.

17

Through this process, the Board members involved in the deliberative process and adjudication avowed they were uninfluenced by the previous impressions, and that they were not pre-committed to the position of Kinavey's wrongdoing. To the extent some Board members witnessed some of the factual events, they testified they did not harbor any bias against Kinavey that would preclude them from fairly deciding the case. *Id.* Specifically, the Board members testified they did not prejudge the case, kept an open mind during the hearing, and limited their deliberations to the evidence presented at the hearings. *Id.* Although Kinavey attacks the testimony elicited at *voir dire* as "self-serving" and "unbelievable," Appellant's Brief at 43-44, determinations as to weight of evidence and credibility are for the factfinder, not this Court. *See East Coast Paving & Sealcoating, Inc. v. North Allegheny School District*, 111 A.3d 220, 234 (Pa. Cmwlth. 2015).

With regard to the alleged commingling conduct by Solicitor, the Board hired new counsel to serve as lead prosecutor and hearing examiner. Although Solicitor conducted the probable cause investigation and served as co-prosecutor throughout the original hearing, he did not participate in the adjudicatory process. *See Brown.* While some Board members communicated with and received advice from Solicitor, such communication was not impermissible. A solicitor may continue to advise the Board and even prosecute the case as long as he is not presenting evidence in the case while at the same time ruling on the admissibility of that evidence. *See Human Relations Commission v. Feeser*, 364 A.2d 1324, 1327 (Pa. 1976) (finding no impermissible commingling where there was no evidence to support contention that counsel advised the hearing panel at the hearing and in the decisional process); *see also Brown.* Although Solicitor presented evidence, including his own testimony, he did not rule on the

admissibility of evidence, act as the hearing officer, or otherwise participate in the adjudication of the case.

Upon further review, we note that many of the Kinavey's allegations of impermissible commingling involve the conduct of one Board member, D'Alessandro. Kinavey contends D'Alessandro commingled prosecutorial and adjudicatory functions when she conducted her own investigation, which led to the plagiarism charges; strategized with Solicitor regarding prosecution witnesses to be called and questions to be asked at the hearing; and engaged in *ex parte* communications with counsel and third parties about the case. Although we are troubled by D'Alessandro's actions, she did not participate in the deliberations or adjudication. D'Alessandro recused herself during the original hearing. C.R., Vol. IX, at 2263-64. The trial court directed her continued recusal in the remand proceeding. Consequently, she was not involved in the deliberative or adjudicative process in the initial hearing or the remand hearing.

For these reasons, we conclude the trial court did not err in determining there was no impermissible commingling of the prosecutorial and adjudicatory functions by Solicitor or Board.

### C. Substantial Evidence

Lastly, Kinavey contends the Board's adjudication is not supported by substantial evidence and must be overturned. She claims the Board's findings regarding the interview process were arbitrary and capricious, and the result of a deliberate disregard of competent testimony and evidence. Specifically, she takes issue with the Board's findings nos. 123-125 regarding "new information" discovered after Solicitor made his initial report to the Board. The Board found Solicitor learned there was a consensus among the interview team that Breisinger

19

would be the candidate recommended for the position and that not all of the team shared Kinavey's negative assessment of Breisinger's capabilities; the Board was not advised that the interview team reached a consensus that Breisinger would be the recommended candidate for the English teacher position; and, this new information changed the complexion of how the hiring situation was handled.

According to Kinavey, this was not "new information." Solicitor interviewed all members of the interview team in his initial investigation. Based on their statements to him, Solicitor concluded all members of the team agreed Breisinger performed poorly during her interview. The consensus that Breisinger would be recommended to the Board was based solely on the fact that she was the sole remaining candidate for the position and they operated under the belief that she had to be hired. Kinavey claims the Board knew of this "consensus" when Solicitor made his initial report. *See* R.R. at 245a-247a. This knowledge contradicts and renders unreliable any testimony to the contrary.

In addition, Kinavey challenges numerous other findings on the ground that the Board capriciously disregarded evidence, namely her own unrefuted testimony. She also maintains the Board ignored the testimony of the District's witness, Carl DeJulio, Ed. D., who testified Kinavey did not violate District policy.

With regard to the plagiarism charges, she claims the conduct proved was not plagiarism as a matter of law because she did not deliberately and knowingly present another person's original ideas or creative expressions as her own. Even if she made a mistake by not referencing the sources of her welcome letters, the Board presented no policy that plagiarism was prohibited by the District. Therefore, this cannot serve as a basis for discharge.

20

It is well settled that findings of fact must be supported by substantial evidence. *Bonatesta v. Northern Cambria School District*, 48 A.3d 552, 558 (Pa. Cmwlth. 2012). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* When performing a substantial evidence analysis, the court must view the evidence in the light most favorable to the party that prevailed before the fact finder. *Id.* It is for the school board, not the court, to assess the credibility of the witnesses. *Id.* This Court may not reweigh the evidence or make its own credibility determinations. *Spencer v. City of Reading Charter Board*, 97 A.3d 834, 842 (Pa. Cmwlth. 2014). However, a court will "overturn a credibility determination if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational." *Bonatesta*, 48 A.3d at 558 (quoting *Agostino v. Township of Collier*, 968 A.2d 258, 263-264 (Pa. Cmwlth. 2009)). "A capricious disregard of evidence exists only when there is a willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching a result." *Id.* at 559 (quoting *Agostino*, 968 A.2d at 264).

Here, Kinavey challenges the Board's findings Nos. 123-125 as unsupported by substantial evidence. These findings provide:

> 123. After [Solicitor] made his report to the Board on September 15, the Board was later advised that there had been a consensus among the interview team at the end of July that Breisinger would be the candidate for the position and that this explained why others on the administrative team (i.e., Ms. Rajgopal, Mr. Haselhoff) operated as though Breisinger was going to be hired, and that not all of the administrative team shared Kinavey's negative assessment of Breisinger capabilities. N.T. pp. 878 -879.

21

124. [Solicitor] was first informed by Rajgopal of the circumstances surrounding the interview team's consensus regarding the hiring of Breisinger the day after he delivered his report to the Board. N.T. p. 682. This new information 'materially changed the complexion' of how the Breisinger hiring situation was handled, and was brought to the Board's attention. N.T. p. 682.

125. The Board was not advised that the interview team had come to a consensus that Breisinger would be the candidate recommended for the English/Reading Specialist position until September 16, 2009. N.T. p. 979.

R.R. at 36a-37a.

Our review of Solicitor's first report to the Board confirms Kinavey's assertion that Solicitor apprised the Board of the "consensus" to hire Breisinger. R.R. at 245a-246a. Specifically, Solicitor reported to the Board: "The **consensus**, which was not objected to, was that [Breisinger] was to be recommended to the Board." *Id.* at 246a (emphasis added). As a result, the Board's finding that it was not aware of a consensus until after the Solicitor's report is not supported by substantial evidence.

Notwithstanding, the circumstances surrounding the interview team's consensus was new information. When the Solicitor first reported to the Board, the nature of the consensus was that Breisinger was merely the candidate by default. *See* C.R., Vol. II, at 642-643. Solicitor's initial report reflected the team's negative assessment of Breisinger. Specifically, Solicitor reported "there was dissatisfaction with the lesson [Breisinger] used as a demonstration." R.R. at 245a. He continued:

The opinion was shared that the lesson was below the grade level for 12th grade, using the Three Little Pigs story as a model with an Hispanic based comparison and a Venn diagram which measure the area(s) of

22

> commonality between the stories. The notes also reveal that [Breisinger] knew little about [response to intervention] as well as differentiated instruction which the Committee deemed to be important. She also had no suggestions for reading assessment models.

*Id.*

Kinavey herself testified she believed the lesson plan was "not grade appropriate, even for remediation, and the vocabalary [sic] words were not grade appropriate, they were vocabalary [sic] words you would use for 3rd grade . . . ." C.R., Vol. IV, at 1169. According to Kinavey, everyone agreed the lesson plan was not grade appropriate. *Id.* at 1179.

Solicitor testified, "it appeared that there were these issues of this lesson and that the recommendation and the non-hiring of ... Breisinger was basically the result of that." C.R., Vol. II, at 575. He thought Breisinger "had not performed as she should have in the process" and that there were "issues with her interview." *Id.* at 642. The interview team was told it had to hire Breisinger. *Id.* at 643.

However, after Solicitor presented his report, he received a call from Rajgopal, who advised him regarding the circumstances surrounding the consensus to recommend Breisinger. C.R., Vol. II, at 575. Solicitor learned there was a consensus to hire Breisinger, not because the team had to hire her, but because she was "generally confirmed." *Id.* at 575, 643. When Solicitor conducted his second investigation, he discovered not all team members shared Kinavey's negative assessment of Breisinger's capabilities or agreed her lesson plan was not grade appropriate or lacked rigor.

At the hearing, Haselhoff credibly testified Breisinger's lesson plan was satisfactory and the team did not express agreement that the plan was not

grade-appropriate. F.F. No. 137; C.R., Vol. II, at 500. Ware, who was an English teacher himself as well as the Associate Principal responsible for oversight of the high school's English department, testified Breisinger's lesson plan was grade-appropriate. Ware further testified her plan was "loaded with rigor," "very thorough," and included "rationale," "objectives" and "standards." F.F. No. 44; C.R. Vol. II, at 487-488. Petersen referred to Breisinger as "very strong English candidate[]" and did not recall any objection to her candidacy. C.R., Vol. I, at 198-199. Substantial evidence supports the Board's findings that the information regarding the circumstances surrounding the consensus to recommend Breisinger was new and undermined Kinavey's position that Breisinger was not recommended.

As for Kinavey's assertions that the Board ignored or capriciously disregarded her testimony, the Board considered her testimony. The Board determined her testimony was directly contradicted by the sworn testimony of the District's administrators. *See* F.F. Nos. 131-156. Although portions of her testimony were unrefuted, the Board specifically rejected her testimony as "untruthful." F.F. No. 157; Conclusion of Law No. 35. Contrary to Kinavey's assertions, the Board's credibility determinations were not arbitrary or capricious. *See Bonatesta*. Thus, we will not disturb them on appeal.

Kinavey also contends the Board willfully disregarded testimony from the District's expert witness, Dr. DeJulio. Dr. DeJulio testified that Kinavey did not violate any District policy in the hiring process. C.R., Vol. III, at 902, 919, 981; C.R., Vol. IV, at 1096. He further testified that the District's professional employee hiring policy does not require the superintendent to inform the Board about a candidate the superintendent is not recommending to be hired. C.R., Vol.

24

IV, at 1096. According to Kinavey, this testimony contradicts any evidence of any wrongdoing.

However, the Board did not remove Kinavey for violating District policy. Rather, it removed her from office for engaging in conduct that constituted neglect of duty and immorality under Section 1080 of the Public School Code. The Board cited Kinavey's lack of candor and dishonesty to the Board as well as personal bias as bases for its decision.

In that regard, Dr. DeJulio testified that Kinavey, as superintendent, owed the Board a duty of candor and full disclosure. C.R., Vol. III, at 930. He testified the charges against Kinavey, if proven, exhibited a breakdown in communication and represented a pattern of behavior that he considered neglect of duty. *Id.* at 902, 910, 927, 932-33. While recognizing it is a superintendent's prerogative not to recommend a candidate to the Board, Dr. DeJulio questioned Kinavey's action of circumventing the hiring process and unilaterally removing Breisinger's name from consideration without involving the team. C.R., Vol. III, at 909, 928. Regarding the lesson plan, Dr. DeJulio testified the information obtained "from one 15 minute presentation is extremely limited." *Id.* at 934. He was confused why anyone would put so much credence on a 15 minute lesson plan as opposed to Breisinger's seven-year history working as a substitute in the District. *Id.* Contrary to Kinavey's assertions, Dr. DeJulio's testimony does not support her position.

Finally, Kinavey's argument that the verbatim copying of written works, without attribution, and passing them off as her own did not constitute plagiarism as a matter of law is unavailing. Plagiarism is generally defined as:

> The act of appropriating the literary composition of another, or parts or passages of his writings, or the ideas or language of the same, and passing them off as the

25

product of one's own mind. If the material is protected by copyright, such act may constitute an offense of copyright infringement.

BLACK'S LAW DICTIONARY 1150 (6th ed. 1990).

Kinavey does not deny she copied the materials in the letters without proper attribution. To the extent Kinavey alternatively claims her use of the material without attribution was an innocent mistake, the Board found her intention was to mislead and deceive because she copied three of the letters in her own hand and provided them to her secretary for typing. The Board found that she did this to make it appear that she drafted the text herself.

Although the District did not have a formal policy prohibiting plagiarism, plagiarism clearly constitutes academic dishonesty that is both immoral and incompetent for a school superintendent to engage in. On this basis alone, the Board was justified in removing Kinavey from employment.

Although the record may contain evidence that would support findings other than those made, the proper inquiry is whether the evidence supports the findings actually made. *See Ductmate Industries, Inc. v. Unemployment Compensation Board of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008). Upon review, the Board's necessary findings are supported by substantial evidence and support the Board's determination that Kinavey was not fit to serve as superintendent of the District.

## IV. Conclusion

In sum, the trial court did not err or abuse its discretion in affirming the removal of Kinavey as superintendent of the District. The trial court's opinion consisted of general findings and disposed of all claims for relief on the impermissible commingling issue in accordance with the rules. Kinavey's

constitutional rights were not violated as neither the Solicitor nor Board members engaged in impermissible commingling conduct. Finally, substantial evidence supported the Board's grounds for removal of Kinavey as superintendent of the District based on Kinavey's dishonesty and lack of candor to the Board surrounding Breisinger's candidacy as well as acts of plagiarism.

Accordingly, we affirm.

MICHAEL H. WOJCIK, Judge

27

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Terry Kinavey,             :
                                  : No. 1081 C.D. 2015
                Appellant    :
                                  :
              v.                :
                                  :
West Jefferson Hills School District   :
and Board of Directors of           :
West Jefferson Hills School District   :

O R D E R

AND NOW, this 15th day of  June, 2016, the order of the Court of Common Pleas of Allegheny County, dated June 5, 2015, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge